Blanche Wright Brown, Administratrix of the Estate of Gideon Pillow Brown, Deceased, Appellee, v. William D. Sprague et al., on appeal of William D. Sprague, Appellant.

Gen. No. 27,742.

1. FOREIGN CORPORATIONS—*when prima facie case of doing business without license shown by evidence.* A prima facie case of doing business in Illinois by an unlicensed foreign corporation is established in a suit against officers of the corporation for the unpaid balance due to plaintiff's intestate on the purchase price of patent rights by evidence that the corporation was chartered in Delaware and not licensed in Illinois, that it maintained an office in Chicago in which its officers were to be found and where they transacted the negotiations which culminated in the contract sued on, after the making of a royalty contract with decedent, that the officers there employed an attorney to secure a license for the corporation in Illinois, and where there is no evidence that they transacted any business outside the State.

2. SAVING QUESTIONS FOR REVIEW—*waiver of error in ruling on evidence by failure to renew objection.* Error in permitting an administratrix to testify that she is the administratrix of the estate in question, over objection that such fact could only be shown by producing the record of her appointment by a court of competent jurisdiction, is waived where such witness thereafter testifies on numerous occasions without objection to the same fact.

Brown v. Sprague, 229 Ill. App. 338.

3. EVIDENCE—*judicial notice of rules of court.* In an action in the municipal court of Chicago, judicial notice will be taken of the rules of such court, and it is not error to admit them in evidence over objection, where it is not contended that they are not the proper rules.

4. EVIDENCE—*when notice served on counsel admissible without proof of signature.* It is not error to admit in evidence, in an action in the municipal court of Chicago for the unpaid purchase price for patent rights, a notice served on counsel for defendants without proof of the signatures thereon where it is not contended that the notice was not signed by such counsel.

5. EVIDENCE—*when unsigned copy of receipt is admissible.* In an action by an administratrix to recover the unpaid balance due on the purchase price of patent rights bought from her intestate, it is not error to admit in evidence an unsigned copy of a receipt given by decedent for a portion of the purchase price paid him as first payment under the contract of sale, where plaintiff testifies that she saw the original receipt signed and that it was signed by her intestate and the evidence shows that the original receipt is in possession of defendants.

6. CONTRACTS—*sufficiency of proof of sales contract.* An agreement for the purchase of patent rights from plaintiff's intestate by a foreign corporation is established in an action to hold the officers of such corporation for the unpaid balance of the purchase price, by evidence of the negotiations between decedent and defendants for the acquisition of the patent rights in question which culminated in the making of the contract and the payment of a portion of the purchase price, and the giving of a receipt therefor stating the amount should apply on the outright purchase price, that after the death of the decedent, plaintiff, his wife, called on defendants on numerous occasions and demanded payment of the unpaid balance and that defendants then admitted the making of the agreement and agreed to pay the balance due at a subsequent time.

7. FOREIGN CORPORATIONS—*when dealings with officers not shown to have been with notice of unlicensed status.* The owner of the patent rights, who sold them to a foreign corporation which was not licensed to transact business in Illinois, is not shown to have dealt with the officers of such corporation with knowledge that it was not licensed so as to bar recovery by his administratrix against the officers for the unpaid purchase price, by evidence that he was in the office of such corporation while the president of the company was discussing with its attorney the unlicensed status of the company and asking the attorney why he had got the company into a mess by not sooner attending to the matter of securing a license for it, where the conversation was between

the president and the attorney and plaintiff's intestate had no part in it.

Appeal by defendant from the Municipal Court of Chicago; the Hon. JOHN GREENWAY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1922. Affirmed. Opinion filed May 9, 1923. Rehearing denied and additional opinion filed May 23, 1923. *Certiorari* denied by Supreme Court (making opinion final).

WALTER H. ECKERT and WARREN B. BUCKLEY, for appellant.

SLOTTOW & LEVITON, for appellee; CHARLES LEVITON, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought suit against the defendants to recover $2,250 with interest claimed to be due for the balance of the purchase price of an invention for which an application for letters patent was pending. There was a trial before the court without a jury and a finding and judgment against both defendants in plaintiff's favor for $2,475, the amount of her claim, to reverse which the defendant Sprague prosecutes this appeal.

The record discloses that the defendants, William D. Sprague and Anna M. Andrews, were respectively president and secretary and directors of the Combustion Improvement Company, a corporation organized under the laws of Delaware; that the corporation had never been licensed to do business in the State of Illinois; that on February 13, 1917, a contract in writing was entered into between the Delaware corporation and Gideon Pillow Brown of Lake Bluff, Illinois, since deceased; that this contract was entered into in Illinois and was executed on behalf of the corporation by the defendant Sprague as its president. That contract recites that the company is a corporation organ-

ized under the laws of Delaware and that it is the
owner and assignee of a certain new and useful inven-
tion "for combustion in boilers, furnaces," etc., for
which invention it then had an application pending for
letters patent in the Patent Office in Washington. It
further recited that Brown had invented a new device
for "recombustion" which he claimed was an improve-
ment on similar devices; that the corporation was de-
sirous of securing Brown's interest in his invention
which was described in the application for letters pat-
ent then pending, and by the terms of the contract it
was agreed that the corporation should advance cer-
tain costs toward securing Brown's patent and that
it should manufacture and sell the apparatus covered
by Brown's patent and pay him certain royalties there-
for. The contract gave the corporation an option for
a period of two years to purchase outright all of
Brown's interest in and to the invention for $2,500.
The evidence further shows that on the same day
Brown received $250 from the corporation and exe-
cuted his receipt as follows:

"Combustion Improvement Company
29 S. La Salle St.
Suite 916
Tel. Randolph 4480.
Chicago, Ill., Feby. 13, 1917.

"Received Two Hundred and Fifty Dollars
($250.00) from the Combustion Improvement Com-
pany, a corporation, said sum to apply on the outright
purchase price of $2,500 for invention and letters pat-
ent covering a fuel saving device upon which applica-
tion has been filed February 7, 1917, serial number
147068."

This receipt was signed by the deceased.

Brown died February 27, 1917, and his widow, plain-
tiff, was appointed administratrix of his estate. She
brought suit against the corporation in the municipal
court of Chicago to recover $2,250, and had a judg-
ment therefor. An execution was issued and returned

no part satisfied, and afterwards the instant suit was brought.

Prior to the trial plaintiff filed interrogatories to which the defendant Sprague replied in writing, wherein he stated that the corporation was organized under the laws of the State of Delaware and that it did not at any time procure a license to do business in the State of Illinois. He further stated that he was president of the company, and in reply to an interrogatory as to whether the corporation maintained an office in Chicago prior to February 13, 1917, he stated: "Never had lease to office. Had desk room at 29 S. La Salle street." He further answered that the option contract to which we have referred was executed at 29 S. La Salle street, Chicago.

Plaintiff testified that in the fore part of March, 1917, she saw the original of the receipt offered in evidence for $250 dated February 13, 1917, in Mr. Sprague's office at 29 S. La Salle street, and that her husband's signature was on it. She further testified that she saw the defendant Sprague at Lake Bluff, February 28, 1917, the day after her husband died; that after stating he was sorry to learn of Mr. Brown's death both he and the defendant Andrews said that plaintiff would get all that was coming to her; that Sprague then asked her to come to see him at the office, which she did in the early part of March, going to 29 S. La Salle street; that she saw Sprague at that time and place and told him that she had called at his request to talk over the business which her late husband had had in reference to the patents; that she there said: "You have purchased this patent from him and I have a copy of the receipt for the first payment of $250, and you were to pay $250 on March 9, 1917, and $100 per month thereafter, and he said 'Yes,' and I said 'I have come to talk the matter over with you.' He said I would be treated right in this affair. I said 'I am getting letters of administration in Lake

County, in Waukegan, and when I receive them I will come to collect this money due me.' He said 'all right, as soon as you get your letters of administration then you come in.'" She further testified that about a week later she again called at Sprague's office and went with him and defendant Andrews to lunch; that nothing particular was discussed at that time; that she again saw Sprague about the first week in April and told him she had received her letters of administration and that she had come to collect her money, and that Sprague replied that he had paid, and he then took out some checks and receipts, on top of which was the original receipt signed by her husband for $250 above mentioned; that she asked about the contract and receipt and told Sprague he had only made the first payment of $250, but he denied owing anything.

Plaintiff further testified that she talked with the defendant Andrews during the holidays in 1919, and at that time the latter told plaintiff that she was secretary and treasurer of the company. Plaintiff also testified that she saw the original contract entered into between the company and her husband in defendant Sprague's office at 29 S. La Salle street.

The affidavit of merits filed by the corporation in the suit brought against it in the municipal court was offered in evidence. It was sworn to April 1, 1918, by the defendant Sprague as president of the company. On cross-examination plaintiff testified that when she first saw Sprague at his office on La Salle street she told him that she had talked the matter over with her husband shortly after the contract was made and that he told her that the first contract was for the manufacture of the device on a royalty basis; that right after the contract was signed, her husband together with Sprague agreed that the company buy his interest outright for $2,500; that Sprague said he did not have that much money, that he had only $500 and

would pay $250 then, $250 the next month and $100 per month thereafter until the total amount was paid; that Brown agreed to that and a check was then drawn for the first payment, to which Sprague replied that the plaintiff's version of the transaction was correct; that he had the canceled check and brought out a package of checks or receipts, on top of which was the original receipt for $250, which bore her husband's signature. This was all the evidence offered on behalf of the plaintiff.

Fred B. Silsbee, a lawyer, testified for the defendant that he met Brown at Sprague's office and had a conversation with Sprague in Brown's presence relative to the patent on or about January 20, 1917; that he officed in a room adjoining the space occupied by Sprague; that the door between the two offices was always locked; that on January 20 a young man came into his office and stated that Mr. Sprague wished to speak with the witness. He further testified that he prepared an application for the Combustion Improvement Company and started to take the necessary steps for it to procure a license to do business in Illinois; that he had written the Secretary of State of Illinois for the necessary blanks and the Corporation Trust Company of Delaware for a certified copy of the charter; that the blanks had not been forwarded to the Secretary of State; that he went into Sprague's office and Sprague said: "What kind of a mess have you got us into here? Why, we are a Delaware corporation and we are not licensed to do business in the State of Illinois. Why haven't you attended to this matter?" The witness replied that he had written for blanks and a copy of the charter, and was ready to go ahead and complete the licensing of the corporation in this State but had not done so because Sprague had been making changes in the organization. On cross-examination this witness testified he had been sitting with counsel for defendants advising them in the trial of the case; that at the time he had the con-

versation with Sprague, Brown was sitting outside of the railing but took no part in the conversation. This was all the evidence offered on behalf of the defendants. Neither of the defendants testified or appeared at the trial although each was represented by counsel.

In rebuttal plaintiff gave testimony tending to show that her husband was not in Chicago on or about January 20, 1917, the time when Silsbee testified he had the conversation with Sprague.

1. The defendant Sprague contends that where, as here, it is sought to hold the officers of a foreign corporation which has not been licensed to do business in this State personally liable, the plaintiff must prove that such corporation transacted business in this State and that the entry into one contract or a single transaction is not doing business within the meaning of our statute and the authorities. In support of this the cases of *Plew v. Board,* 274 Ill. 232; *Watson Fireproof Window Co. v. Miller,* 194 Ill. App. 316; *Anderson Computing Scale Co. v. Hattenbach,* 199 Ill. App. 467; *Watson Fireproof Window Co. v. Rysdon & Co.,* 189 Ill. App. 134; *People v. Mascot Copper Co.,* 202 Ill. App. 151, and other cases are cited. And it is contended that there is no evidence in the record that the Combustion Improvement Company at any time transacted any business of any kind or character in this State other than to enter into the written option contract with Brown; that the company maintained no office in this State, held no meetings, and did no business within the meaning of the authorities, and that before the defendant Sprague could be held liable, it was incumbent upon plaintiff to allege and prove that the Combustion Improvement Company exercised its corporate powers within this State.

We think the law as contended for by counsel for defendant is correct, that before he could be held liable in the instant case it must appear that the Combustion Improvement Company was a foreign corporation not

licensed to do business in this State and that it had transacted business here. The only question to be determined on this phase of the case, and it is not at all free from difficulty, is whether the Delaware corporation transacted any business in this State. Section 1, ch. 32, J. & A. Ann. St. ¶ 2526, provides that "before any foreign corporation for profit shall be permitted or allowed to transact any business or exercise any of its corporate powers in this State of Illinois" it shall be required to comply with our statutes by being licensed by the Secretary of State. The question what is the transaction of business by a foreign corporation which has not complied with our statute has often been before this and the Supreme Court of Illinois. It has been held that "entering into one contract or transacting an isolated business act is not engaging in business in this State." *Plew v. Board, supra.* And in *Alpena Portland Cement Co. v. Jenkins & Reynolds Co.*, 244 Ill. 355, and *Finch & Co. v. Zenith Furnace Co.*, 245 Ill. 586, it was held that the words "doing business" or "transacting business," as used in our statute in reference to regulating foreign corporations, have a well settled meaning, and refer only to the transaction of the ordinary business in which the corporation is engaged, and do not include acts such as instituting actions in court.

In the *Plew* case suit was brought on a promissory note of the United Publishing Company. They interposed an affidavit of merits setting up that the company was a Delaware corporation and the court said that from the statement of claim it appeared that suit was brought against the two defendants because the publishing company was a foreign corporation and had made two notes when not authorized to transact business in this State. It was held that the giving of the notes by a foreign corporation was not the transaction of business in this State.

*People v. Mascot Copper Co., supra,* was a manda-

mus proceeding to compel the officers of a corporation to permit the stockholders to examine its books. One of the defenses set up was that the company was a foreign corporation organized under the laws of Arizona; that it was neither licensed to do business nor was it doing business in this State, and, therefore, mandamus would not lie. The copper company owned mines and other property in Arizona. All of its business and affairs were conducted in that State and not in this State. It further appeared that for convenience in the conduct of its business it maintained an office in Chicago which was leased in the name of its treasurer. It was there pointed out that section 13, ch. 32, Rev. St., which required corporations to keep a set of books at their principal office, did not apply to foreign corporations. It is clear that that case is not in point. In the instant case the record discloses that the Delaware corporation by the defendant Sprague, as its president, entered into a royalty contract with Brown in Chicago; that on the same day it again entered into a contract to purchase Brown's interest in his invention; That the corporation maintained an office in Chicago; that its president and other officers were in Chicago where plaintiff saw them on a number of occasions. It further appears that they authorized their counsel, Mr. Silsbee, to take out a license for the company to operate in Illinois. There is no evidence that the company was engaged in business outside of Illinois. Neither of the defendants appeared on the trial, although counsel for the plaintiff said he would waive any objection to their being disqualified under the statute to testify, and although counsel for defendants say they expected to have Sprague in court, but on account of objection by plaintiff's counsel the court refused to postpone the matter. We think if the defendants desired to testify they should have been in court. Upon a careful consideration of the facts and the law, we are of the opinion

that plaintiff made out a prima facie case sufficient to warrant the holding of the court that the Delaware corporation was doing business in this State without a license, and in these circumstances Sprague, acting as president of the company, would be personally liable. *Ryerson & Son v. Shaw,* 277 Ill. 524.

2. The defendant Sprague next contends that the court erred in permitting Mrs. Brown to testify over objection that she was administratrix of her deceased husband's estate, and that this could only be shown by producing the record of her appointment by some court of competent jurisdiction. We think the objection when made should have been sustained, but it further appears in the examination of this witness that she testified a number of times without objection that she had been appointed administratrix of her husband's estate. In these circumstances we think the point was waived. Complaint is also made that the court improperly admitted the rules of the municipal court over defendant's objection, and that like error was committed in admitting the notice served on counsel for the defendant without proof of the signatures, and that there was further error in admitting the unsigned receipt purporting to show receipt of $250 by Brown on account of the purchase price of his invention. We think neither of these contentions can be sustained. The rules of the municipal court were offered in evidence and the trial judge under the law takes judicial notice of them. There is no contention that they were not the proper rules, nor is there any contention that the notice served upon counsel was not signed by them. The testimony of the plaintiff was that she saw the original receipt signed and that it bore her husband's signature.

3. It is further contended that the plaintiff failed to establish the agreement on the part of the defendant to purchase the invention from Brown. The testimony of the plaintiff was to the effect that on a number of occasions she called on Sprague for her money.

She said in substance that her husband had told her that he sold his invention and this, she testified, Sprague admitted was the fact. A further complaint is that Sprague is not liable because Brown knew that the Delaware corporation was not authorized to do business in this State, and in these circumstances Sprague could not be held liable. We think the evidence fails to show that Brown knew that the corporation had not been licensed to do business in this State. The only evidence of defendants in the testimony of Silsbee, who says that when he was discussing the matter with Sprague, Brown was sitting outside the railing and that Brown took no part in the conversation. This is clearly insufficient to show that Brown knew that the Delaware corporation was not licensed to do business in this State.

The judgment of the municipal court of Chicago is affirmed.

*Affirmed.*

.Thomson, P. J., and Taylor, J., concur.