SOUTHEAST GUARANTY TRUST COM-
PANY, LTD., a corporation,
Plaintiff,

v.

RODMAN & RENSHAW, INC., a Dela-
ware corporation, et al., Defendants.

Louis C. MIRIANI and Vera Miriani,
Plaintiffs,

v.

RODMAN AND RENSHAW, INC., a Del-
aware corporation, et al., Defendants.

RODMAN & RENSHAW, INC.,
Counter-plaintiff,

v.

Louis C. MIRIANI, Counter-defendant.

SOUTHEAST GUARANTY TRUST COM-
PANY, LTD., a corporation, Counter-
plaintiff and Cross-plaintiff,

v.

Louis C. MIRIANI, Counter-defendant,

Rodman & Renshaw, Inc., a Delaware
corporation, et al., Cross-
defendants.

SOUTHEAST GUARANTY TRUST COM-
PANY, LTD., a corporation, Third-
party-plaintiff,

v.

CHEMICAL BANK et al., Third-
party-defendants.

Nos. 72 C 1078, 72 C 1093.

United States District Court,
N. D. Illinois, E. D.

Jan. 23, 1973.

See, also, D. C., 358 F.Supp. 1011.

Charles A. Brady, Ettelson, O'Hagan, Ehrlich & Frankel, Chicago, Ill., for Southeast Guaranty Trust Co.

Richard A. Makarski and Stephen E. Kitchen, Chapman & Cutler, Chicago, Ill., for Louis and Vera Miriani.

Sheldon Waxman, Asst. U. S. Atty., for the United States.

Narcisse Brown, Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for Rodman and Renshaw, Inc.

Holland C. Capper, McBride, Baker, Wienke & Schlosser, Chicago, Ill., for City of New York Bank.

Paul B. Uhlenhop, Lawrence, Lawrence, Kamin & Saunders, Chicago, Ill., for Detroit Bank & Trust Co.

George V. Bobrinskoy, Jr., Mayer, Brown & Platt, Chicago, Ill., for Continental Ill. Nat. Bank & Trust Co., Kentucky Trust Co. and American Nat. Bank & Trust Co. of Chicago.

William B. Davenport, Jenner & Block, Chicago, Ill., for Fidelity Nat. Bank of Baton Rouge.

Leon E. Lindenbaum, Walsh, Case & Coale, Chicago, Ill., for National Bank of Detroit.

Thomas F. Ryan, Sidley & Austin, Chicago, Ill., for Chemical Bank.

Thomas F. Tobin, Baker & McKenzie, Chicago, Ill., for First Nat. Bank of Boston.

## OPINION

WILL, District Judge.

These two consolidated cases arise out of the same set of alleged occurrences, which need be briefly summarized prior to a discussion of the motions filed by various defendants. The Mirianis, plaintiffs in 72 C 1093, alleged that certain securities of theirs were stolen from their apartment on January 23, 1972. They claim they immediately notified the police and all paying agents/trustees on the bonds of the theft. In February, Geist, the agent for Southeast Guaranty Trust Company, Ltd. (Southeast), which is the plaintiff in 72 C 1078, had a meeting with defendants Levy and Spiwak at which they offered Southeast these same bonds at a price substantially less than their market value.

Geist then went to Rodman and Renshaw, the brokerage firm used by Southeast, and a defendant in both actions, and asked them to investigate the validity of the bonds. After taking physical possession of the bonds, and after allegedly contacting all paying agents/trustees on the bonds to determine whether they had been lost, stolen, or forged, Rodman and Renshaw advised Geist that the bonds were valid and could be resold. Geist then purchased the bonds from Spiwak and authorized Rodman and Renshaw to resell them for Southeast's account. On February 25, 1972, Rodman and Renshaw advised Geist the bonds had been sold.

On March 3, 1972, Rodman and Renshaw told Geist that they were informed the bonds had been stolen, and later that the resale had been cancelled. Rodman and Renshaw turned the bonds over to the Federal Bureau of Investigation, whose investigation of the matter subsequently led to the indictment of Levy and Spiwak as receivers of stolen property. The United States has retained custody of the bonds for use in the criminal trial against Levy and Spiwak.

Southeast then filed this suit seeking the return of the bonds or indemnification for the money it had paid to Spiwak and Levy plus damages. In Count I, it alleges Rodman and Renshaw violated the Rules of Fair Practice of the National Association of Securities Dealers by its refusal to return the securities to

Southeast. In Count II, naming Miriani, Spiwak, Levy, the United States of America, and Rodman and Renshaw as defendants, it seeks a declaratory judgment determining Southeast to be the lawful owner of the bonds, and an injunction ordering the bonds to be delivered to it. In Count III, indemnification and damages are sought against Spiwak and Levy for their knowingly false and fraudulent misrepresentation of the validity of the bonds. In Count IV, Southeast seeks indemnification and damages from Rodman and Renshaw for the breach of its duty to verify properly the validity of the bonds. And, in Count V, it names all the paying agents/trustees on the bonds [1] for their false and fraudulent misrepresentations that the bonds had not been stolen or forged and that Spiwak and Levy were fully authorized by the owners of the bonds to negotiate the sale at a discount.

Suit was also filed by the Mirianis, the alleged original owners of the bonds from whom they were stolen. In that action, 72 C 1093, Rodman and Renshaw, Southeast, Geist, Spiwak, Levy and the United States are named as defendants, and the Mirianis seek a declaration that they are the lawful owners of the bonds and the return of the bonds or a judgment entered against Levy and Spiwak for their market value.

After being named as a defendant in the Miriani complaint, Southeast filed a counter-claim, cross-claim and third-party complaint in 72 C 1093 which parallel Counts II, III, IV and V of its original claim. Meanwhile, the Internal Revenue Service attached a levy to the bonds based on a jeopardy assessment against the Mirianis for an income tax deficiency. The Mirianis have since added to their complaint a count seeking an injunction against the levy. Southeast also attacks the levy, alleging that it, and not the Mirianis, is the lawful owner of the bonds.

The matters dealt with in this opinion involve motions to dismiss filed by the paying agents/trustees of the bonds named in Count V of the Southeast complaint and in the Third-Party complaint filed by Southeast in the Miriani suit. While all of these defendants seek dismissal, the motions are based on a variety of grounds and are treated separately by subject matter.

## IMPROPER VENUE

The out-of-state national banks, First National Bank of Boston, National Bank of Detroit and Fidelity National (Baton Rouge, Louisiana) moved pursuant to Federal Rule of Civil Procedure 12(b)(3) to dismiss Count V of the Southeast complaint and its Third-Party complaint in the Miriani suit as against them on the ground that under Section 5198 of the National Banking Act, as amended, 12 U.S.C. § 94, venue is improper in the Northern District of Illinois. Section 94 provides:

> Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association [is] established. . . .

That section has been consistently interpreted to mean that an action brought against a national banking association is strictly limited to the single district where that association is established. See Buffum v. Chase Nat. Bank of City of New York, 192 F.2d 58 (7th Cir. 1951), cert. denied 342 U.S. 944, 72 S.Ct. 558, 96 L.Ed. 702. See also, Mercantile Nat'l Bank of Dallas v. Langdeau, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963); Brown v. Bank of America National Trust and Savings Association, 281 F.Supp. 82 (N.D.Ill.1968). Further, a national Bank is "established" only in the District containing the place specified in its charter as its place of business. See *Buffum, supra.* While the

1. Chemical Bank, City National Bank, City of New York, Continental Illinois National Bank & Trust Co., Fidelity National Bank, The First National Bank of Boston, Kentucky Trust Co. and National Bank of Detroit.

hardships sometimes imposed on plaintiffs as a result of this privilege accorded national banks have caused Section 94 to come under severe criticism,[2] we concur in the conclusion of the other courts that have considered the issue that the remedy lies in Congress. Consequently, since none of the three moving banks are established in the Northern District of Illinois, suit against them is improper here and they have been dismissed.[3]

## SUBJECT MATTER JURISDICTION

■ Four of the remaining defendants named in Count V, Kentucky Trust Co. (Kentucky Trust), the Detroit Bank & Trust Co. (Detroit Bank), Chemical Bank of New York (Chemical Bank), and Continental Illinois National Bank & Trust Co. (Continental Bank), have moved to dismiss the Southeast complaint for lack of subject matter jurisdiction. The only jurisdictional allegation in the Complaint is found in Count I, basing that Count on Section 15A of the Securities and Exchange Commission authority to regulate the National Association of Securities Dealers (NASD). However, another provision of that same act provides: "Nothing in this section shall be construed to apply with respect to any transaction by a broker or dealer in any exempted security." 15 U.S.C. § 78o–3(m) and Section 78c(a)(12) defines an exempted security as including:

Securities which are direct obligations of or obligations guaranteed as to

principal or interest by a State or any political subdivision thereof or by any agency or instrumentality of a State or any political subdivision thereof, or by any municipal corporate instrumentality of one or more States;

. . . .

All of the bonds involved in these suits are in this class of exempted securities. Consequently, no federal cause of action can be maintained for an alleged violation of the Rules of the NASD with respect to these bonds.[4]

Since there is no other basis for asserting a federal cause of action against these defendants, the only remaining ground for this court's jurisdiction is diversity of citizenship. Under 28 U.S.C. § 1332, defendants contend this court does not have such jurisdiction because there is a lack of complete diversity between plaintiff and defendants as required by that section. Defendants Rodman and Renshaw, having its principal place of business here, and Continental Bank, incorporated and having its principal place of business here, are both citizens of Illinois for jurisdictional purposes. They argue that Southeast, the plaintiff, is also a citizen of Illinois because while it is a Bahamian corporation, Illinois is its principal place of business.

Section 1332(c) of Title 28, U.S.C., provides:

For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorpo-

2. Klein v. Bower, 421 F.2d 338 (2nd Cir. 1970); Bruns, Nordeman & Co. v. American National Bank and Trust Company, 394 F.2d 300 (2nd Cir. 1968).

3. Plaintiffs argue that, even conceding the holdings construing Section 94 as mandatory, it should not apply in a situation where the bank is a third-party defendant, given the specific purpose of Rule 14 to avoid duplicative trials. We cannot agree that Rule 14 in any way vitiates § 94, since a third-party action is as much an action against a national bank as a direct suit. Plaintiff offers no authority in support of its argument, and, indeed, none can be found.

4. As pointed out by one of the defendants, even if the bonds were subject to the rules of the NASD, recent rulings have held that the negligent violation of the rules of stock exchanges do not give rise to a federal cause of action under the Securities Exchange Act of 1934. See, e. g., McMaster Hutchinson and Company v. Rothschild and Company, CCH Fed.Sec. Law Rep. Par. 93,541 (N.D.Ill.1972); and The Aetna Casualty & Security Co. v. Paine, Webber, Jackson & Curtis, et al., CCH Fed.Sec. Law Rep. Par. 92478 (N.D.Ill.1970).

rated and of the State where it has its principal place of business. . . .

It is not contested that Illinois is the principal place of business of Southeast. In its complaint, it states that it maintains a business office in Chicago and alleges that: "the only business of this bank has been certain transactions for its own account in the stock market. All of these transactions were made in and through a discretionary account at the brokerage house of Rodman and Renshaw." (First Amended Complaint, Count II, Par. 2.) The only question is whether or not section 1332(c) applies to foreign corporations. Southeast contends it does not apply and that a foreign corporation is only a citizen of the foreign state in which it is chartered. This interpretation would mean that foreign corporations would share the same status as foreign citizens living in this country: no matter how long they have lived here they will always be "diverse" to citizens of this country living in the same state.

The first court to consider the question of the applicability of § 1332(c) to foreign corporations was the Southern District of New York in Eisenberg v. Commercial Union Assurance Company, 189 F.Supp. 500 (S.D.N.Y.1960). Plaintiff there was a New York citizen and defendant was a British corporation with its principal place of business in London. Defendant also had many offices in the United States, the principal one being in New York. Defendant's argument in *Eisenberg* was that 1332(c) should be construed to mean that a foreign corporation was a citizen of the state in which it had its principal place of business *in the United States* regardless of whether or not that office was, in fact, the corporation's principal place of business world-wide. The court rejected that interpretation, and finding defendant's principal place of business to be in London, held that the New York court did have diversity jurisdiction. That is the strict holding of the case. However, the court additionally commented on the general applicability of 1332(c) to foreign corporations. Finding no evidence of any Congressional intent on this particular issue, it went into a lengthy analysis of the phrasing and wording of the statute and found its literal meaning to be that, "unless a corporation is incorporated by a State of the United States it will not be deemed a citizen of the State where it has its principal place of business." This conclusion was based on the differentiation the court concluded Congress had made in § 1332(a) between States of the United States and foreign states by the use of a capital S for the word when applied to a State of the United States. Since 1332(c) only employs the word State with a capital S, it felt it could only be construed to apply to corporations chartered in the United States.[5]

Another New York district court, when confronted with a factual situation identical to the one before us, and cited by defendants here as dispositive, accepted the dictum of the *Eisenberg* court and held that 1332(c) did not apply to foreign corporations. Chemical Transportation Corp. v. Metropolitan Petro. Corp., 246 F.Supp. 566 (S.D.N.Y.1965). While several other courts have adopted the holding of Chemical Transportation

---

5. It is important to emphasize that the *Eisenberg* court did not rest its decision solely on its determination that § 1332(c) did not apply to foreign corporations. The opinion itself concedes the possibility that its interpretation might be incorrect. See 189 F.Supp. at 502. Further, Moore states *Eisenberg* holds "that only a corporation of a domestic state is deemed to be a citizen of the state where it has its principal place of business, and that *even if the 1958 amendment does apply to alien corporations*, it does so only when the corporation has its world-wide principal place of business in a state of the United States." (Emphasis supplied) 3 Moore, Fed.Prac. Par. 0.77[2–3] at 717.46. In addition, Barron & Holtzoff conclude that to the extent that it relies on its finding that § 1332(c) does not apply to foreign corporations, the *Eisenberg* opinion is "open to question." See 1 Barron & Holtzoff, Fed.Prac. and Procedure, 1970 Supp. § 26 at 95.

Corp. and the dictum of *Eisenberg*,[6] we do not agree with that analysis.

There are many instances in which the second half of section 1332(c) does not apply to United States corporations, i. e., where a corporation maintains its principal place of business in the same state in which it is incorporated. Since it makes no sense at all for a corporation to be twice a citizen of the same state. there must be read in at the end of the section, "if the State of its principal place of business is different from the State of its incorporation." Similarly, we see no ground for concluding that because the first half of the section does not apply to foreign corporations, that the second half should have no applicability to them at all. It seems no greater extension of the language to read in, when dealing with foreign corporations, "if its principal place of business is in the United States." Obviously Congress would only use the word State with a capital S, since if a corporation's principal place of business was in a foreign state it would have no effect whatsoever on its citizenship for diversity purposes in the courts of the United States.

■ While it is true that Congress apparently gave no explicit consideration to the effect of the amendment on alien corporations, our interpretation of its applicability better serves the express Congressional purpose of the amendment which was to limit the diversity jurisdiction of the federal courts. By enacting § 1332(c). Congress sought to preclude any technical finding of diversity, when, in fact, no such diversity existed.[7] When a corporation, while incorporated in another state, maintained its prin-cipal place of business in the same state in which its legal adversary was a citizen, it was felt neither to need nor deserve the protection of a federal court from any possible state court bias against an outsider. This rationale is no less compelling when applied to a corporation which has been chartered in a foreign country but maintains its principal place of business in the United States. The *Eisenberg* court itself, after analyzing why the defendant there might still be subject to prejudice as an outsider since its principal place of business was in London, stated:

> On the other hand, if a Bahaman corporation, for example, has located its principal place of business in New York, the inference is legitimate that it has adopted New York as its actual residence and that it is no longer entitled to be considered an outsider and to deserve the protection accorded outsiders. 189 F.Supp. at 502.

■ We hold then that section 1332 (c) applies to foreign corporations whose principal place of business is located in the United States. Thus, since Illinois is the principal and sole place of business of Southeast, even though it is incorporated in the Bahamas, complete diversity does not exist between plaintiff and all defendants and this court does not have jurisdiction over Southeast's suit.[8]

To eliminate the possibility of any confusion regarding the consequences of our disposition of these motions, we will consider the effect, if any, on the claims in the *Miriani* action, 72 C 1093. In that case, defendants here are named as third party defendants by the plaintiff in this

---

6. See e. g., Union Marine & General Ins. Co. v. American Export Lines, Inc., 274 F.Supp. 123 (S.D.N.Y.1966); Willems v. Barclays Bank D. C. O., 263 F.Supp. 774 (S.D.N.Y.1966); Tsakonites v. Transpacific Carriers Corp., 246 F.Supp. 634 (S.D.N.Y.1965); Mazzella v. Pan Oceanica A/S Panama, 232 F.Supp. 29 (S.D.N.Y.1964).

7. Sen.Rep. No. 1830, 85th Cong., 2d Sess., to accompany HR11102, 2 U.S.Cong. Code and Admin. News (1958), p. 3099 et seq.

8. Count III naming Spiwak and Levy, is the only count in which Rodman and Renshaw or Continental Bank, which are clearly citizens of Illinois, are not named. However, we must assume from the absence of any allegation of diversity with respect to that Count that either Spiwak or Levy or both are also citizens of Illinois, and that Count must be dismissed along with the others.

action, Southeast. The theory of liability duplicates that urged against defendants in Count V of Southeast's original complaint. The Mirianis, plaintiffs in 72 C 1093, are citizens of Michigan. Since none of the named defendants are citizens of Michigan, the complete diversity required by 1332 exists and this court has jurisdiction over that action.

The only question is whether there need be complete diversity between the third-party plaintiff and the third-party defendants. The rule is that a third-party claim is ancillary to the main claim and requires no independent jurisdictional basis either with respect to diversity or jurisdictional amount. See Moore, Federal Practice, ¶ 14.26 at 703 and cases cited therein. Consequently, the lack of complete diversity between the third-party plaintiff, Southeast, and the third-party defendants which is fatal to Southeast's own action, does not defeat the court's jurisdiction over the third-party claim in the *Miriani* action.

The final argument against this court's subject matter jurisdiction is best construed as an objection to the propriety of the third-party claim. It is urged that neither in Count V of the original complaint nor in the third-party complaint does Southeast set forth the facts or theory upon which defendants would be liable to Southeast with respect to the transactions. This argument has no merit. The Miriani's are suing Southeast, claiming it either knew or should have known of the invalidity of the bonds. Southeast alleges that Rodman and Renshaw was entrusted with, and accepted, the task of checking the validity of the bonds and reported to Southeast that the bonds were valid. In reliance on this information, Southeast directed the sale of the bonds. Thus, if Rodman and Renshaw performed an adequate check, the erroneous information must have emanated from the paying agents/trustees. This theory of third-party liability is obvious from the allegations in the complaint and complies adequately with the directive of Rule 8, Fed.R.Civ.P., that a claim for relief contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Thus, all motions arguing for dismissal of the cause for lack of subject matter jurisdiction will be denied as to the Miriani action.

## PERSONAL JURISDICTION

The City of New York, Detroit Bank and Trust, and Kentucky Trust have all moved to dismiss the complaint and third-party complaint as against them for lack of personal jurisdiction. In accordance with Rule 4(d)(7), Fed.R. Civ.P., allowing service of process in the manner prescribed by the law of the state in which the court sits, service was made on all three of these defendants at their respective places of business in New York, Detroit and Louisville, pursuant to Section 16, Ill.Rev.Stat., ch. 110. Southeast argues that these defendants have submitted to the jurisdiction of Illinois courts under the Illinois long-arm statute, Ill.Rev.Stat. ch. 110, § 17. That statute, in relevant part, provides:

§ 17. Act submitting to jurisdiction —Process

(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

 (a) The transaction of any business within this State;

 (b) The commission of a tortious act within this State; . . .

The Illinois Supreme Court has construed this section to expand personal jurisdiction over non-residents to the full extent of the limits permitted by the due process clause of the United States Constitution. See, Nelson v. Miller, 11 Ill.2d 378, 389, 143 N.E.2d 673, 679 (1957). The due process clause, in turn, has been held to require only that a de-

fendant "have certain minimum contacts with . . . (the forum) . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310 at 316, 66 S.Ct. 154, at 158, 90 L.Ed. 95 (1945). See also, Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) and McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

■ The first question then is whether defendants' alleged conduct constituted the "commission of a tortious act within this State" as required by the Statute. We find that it does. Rodman and Renshaw claim that in response to Southeast's request for a check on the validity of the bonds, Rodman and Renshaw telephoned the paying agents/trustees who informed it the bonds had not been lost, forged or stolen. Since Miriani claims to have notified all of these paying agents/trustees of the theft, the giving of this erroneous information was a breach of their common law duty to Southeast's Agent, Rodman and Renshaw, and resulted in damage to Southeast in Illinois. Since the injury occurred in Illinois, the "tortious act" requirement of Section 17 is satisfied under the Illinois Supreme Court's ruling in Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961) that the place where the injury occurs is the place of the tortious act since the injury is the last event necessary to render the actor liable.

The only remaining issue is whether holding these defendants amenable to suit in this jurisdiction would offend the traditional notions of fair play and substantial justice of the due process clause. We find that it does not since defendants' contact with Illinois was even more significant than the manufacturer's in Gray, supra. There, the defendant had not shipped the defective part into the state, but only was presumed to have contemplated the likelihood that its goods would end up in Illinois after being installed into machinery by the purchasers of the parts. Here, defendants' alleged transmittal of erroneous information into Illinois was direct and involved no intermediate supplier.

While this sending into the state of misinformation occurred over the telephone, it cannot be seriously argued that the lack of actual physical presence of the defendant vitiates any finding of jurisdiction. Nor does it make any difference that only one telephone call was involved with respect to this particular transaction. As was pointed out by the Illinois Appellate Court in Kropp Forge Co. v. Jawitz, 37 Ill.App.2d 475, 186 N.E.2d 76 (1st Dist.1962), when a more stringent standard of doing business was used to determine jurisdiction:

. . . The ultimate test is the substance of the act rather that the quantity. The criteria "cannot be simply mechanical or quantitative." 186 N.E.2d at 79.

It is sufficient that the activity in the state be related to the cause sued upon, as it unquestionably is here. Further, here, as in Gray, defendants do not claim that this telephone call from Rodman and Renshaw is an "isolated instance." In the absence of any allegation otherwise, we do not think it an unfair inference to assume that defendants, as paying agents/trustees on bonds which float freely through the securities markets, have been called upon before by brokers or individuals in Illinois to verify the validity of such bonds.

■ In light of this analysis, we hold that defendants' contact with Illinois is of a nature so as to satisfy the Illinois long-arm statute and does not offend the due process clause of the United States Constitution. Since this Court has jurisdiction over defendants City of New York, Detroit Bank and Trust and Kentucky Trust, their motions to dismiss will be denied.

## CERTIFICATE OF AUTHORITY

■ As an alternative to their motions to dismiss, defendants move this

Court to stay the proceedings instituted by Southeast until it obtains a certificate of authority from the State of Illinois qualifying it to do business here. This motion is predicated on Sections 157.102, 157.125 and 157.142 of Ch. 32 Ill.Rev.Stat., prohibiting the maintenance of a suit in the Courts of Illinois by a foreign corporation doing business here but lacking a certificate of authority or being delinquent in its payment of franchise taxes or other fees. See Emcee Corp. v. George, 293 Ill.App. 240, 12 N.E.2d 333 (1937), and Sternberg Dredging Co. v. Sternberg, 351 Ill.App. 514, 115 N.E.2d 557 (1953). We are bound to exclude from the federal courts in diversity cases any foreign corporations doing business here illegally which Illinois chooses to exclude from its courts. See Woods v. Interstate Realty, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949) and Hulburt Oil & Grease Co. v. Hulburt Oil & Grease Co., 371 F.2d 251 (7th Cir. 1966).

 Plaintiff argues that the statutory sections do not apply to it since it does not engage in any more than "isolated transactions" in Illinois. While plaintiff is correct in stating that there exists an exception to the requirements, we do not agree that it falls into that category. As pointed out by one of the defendants, "The transactions which Southeast characterizes as 'isolated' are more properly characterized as its *only* business." (Reply brief, Kentucky Trust Co., p. 6.) Plaintiff itself admits in its complaint that it conducts all of its business in Illinois and maintains an office here for that purpose. While it is true that plaintiff's activities are not as substantial as those of many other companies, that in no way undermines the applicability of the qualification requirements.

The test of doing business is not the volume of business conducted, but refers only to the "transaction of the *ordinary business* in which the corporation is engaged . . ." Brown v. Sprague, 229 Ill.App. 338 at 346 (1923) (emphasis supplied). On this basis, we conclude that plaintiff is transacting business in Illinois within the meaning of the statutes and is therefore required to obtain a certificate authority before it can bring suit in the courts of Illinois.

It makes no difference that as a result of our rulings on jurisdiction that plaintiff no longer has a direct action but is only proceeding as a third-party plaintiff. A third-party claim is not compulsory and in deciding to bring such a claim plaintiff is as much advantaged by the availability of the courts of this State as it would be if it was a direct plaintiff. Thus, Southeast's third-party claim in the Miriani action must be stayed pending Southeast's obtaining of a certificate of authority from the Secretary of State of Illinois.

In summary, based on the above reasoning and conclusions, 1) Southeast action, 72 C 1078, will be dismissed for lack of subject matter jurisdiction; 2) the City of New York, Detroit Bank and Trust, and Kentucky Trust motions to dismiss for lack of personal jurisdiction will be denied; and 3) all defendants' motions to stay the proceedings until Southeast obtains a certificate of authority from the Secretary of State, rendered moot as to the Southeast action, will be granted as to the third-party claims in the Miriani action. An order has already been entered granting the motions made by First National Bank of Boston, National Bank of Detroit and Fidelity National to dismiss for improper venue. An appropriate order will enter.