Ray W. MURPHY et al.,
Plaintiffs-Appellants,

v.

FIRST NATIONAL BANK OF CHICAGO,
Illinois, A National Banking Association,
et al., Defendants-Appellees.

No. 2–56578.

Supreme Court of Iowa.

April 16, 1975.

Steven A. Carter, Sioux City, for appellants.

Corbett, Corbett & Anderson and Jacobs, Gaul, Nymann & Green, Sioux City, Swarr, May, Smith & Andersen and William E. Morrow, Omaha, Neb. and George Hansen, Chicago, Ill., for appellees.

Heard by MOORE, C. J., and MASON, REES, UHLENHOPP and REYNOLDSON, JJ.

REES, Justice.

Plaintiffs appeal from orders of trial court sustaining special appearances of defendants First National Bank of Chicago and First National Bank of Omaha and sustaining a motion to dismiss filed by defendants First National Bank of Sioux City and Morningside State Bank. We reverse and remand for further proceedings.

Plaintiffs Murphy and Meacham are the sole shareholders of Power Engineering Co., Inc., (hereinafter Power) an Iowa corporation, Electrical Contractors, Inc., an Illinois corporation, and Alec Ferguson Electrical Contractors, a California corporation. Plaintiffs originally brought this suit in their own names and later as assignees of Edward F. Samore, Trustee in bankruptcy of the estate of Power, its subsidiaries and related corporations. W. Jefferson Giles, III, whom Samore succeeded as bankruptcy trustee, is designated as a plaintiff in the caption of the case but it is apparent Giles has no interest in the action.

Power is the sole shareholder of Kenny Brown & Associates, Inc., an Ohio corporation, and M & M Equipment Co., Inc., an Iowa corporation. A petition in bankruptcy was filed against Power on June 20, 1969 in the United States District Court for the Northern District of Iowa by the First National Bank of Omaha, the First National Bank of Chicago and Morningside State Bank.

Plaintiffs instituted this action against all of the defendant banking associations in Woodbury District Court in November, 1970, alleging in their petition defendants wrongfully, maliciously and without justification conspired to file and did file an involuntary petition in bankruptcy against Power and as a result caused the destruction of Power, its subsidiaries and related corporations. Plaintiffs sought $10,000,000 in damages, including $2,000,000 for contracts and profits allegedly lost when defendants filed the bankruptcy petition, and $8,000,000 as punitive or exemplary damages.

In December 1970 defendants First National Bank of Omaha and First National Bank of Chicago filed special appearances. In January, 1971 plaintiffs filed interrogatories to be propounded to the two banks, and in February, 1973 made application to the court for permission to take depositions of the banks. Objections to the interrogatories and depositions were filed by the banks and plaintiffs filed resistance to their special appearances.

The Woodbury District Court entered orders in February and May, 1973 sustaining the objections of the First National Banks of Chicago and Omaha to the interrogatories and application to take depositions filed by plaintiffs. The court entered an order sustaining the special appearances of the banks on June 18, 1973.

First National Bank of Sioux City and Morningside State Bank moved to dismiss plaintiffs' original petition in January, 1971. Trial court sustained the motion in a ruling entered April 11, 1973 and dismissed plaintiffs' cause of action against the Sioux City and Morningside banks. Two weeks later, plaintiffs filed a substituted and amended petition, but defendants' motion to dismiss that petition was sustained by the court's ruling entered June 18, 1973.

Plaintiffs here appeal the several rulings and orders entered in trial court sustaining the special appearances of defendant First National Banks of Omaha and Chicago, sustaining objections by those banks to plaintiffs' interrogatories and application to take depositions, and sustaining the motion filed jointly by defendants First National Bank of Sioux City and Morningside State Bank to dismiss plaintiffs' substituted and amended petition for failure to state a cause of action. The issues presented for review derive from plaintiffs' contentions:

(1) Trial court erred in sustaining the motion of First National Bank of Sioux City and Morningside State Bank to dismiss plaintiffs' substituted and amended petition.

(2) Trial court erred in denying plaintiffs' application to take depositions of defendants First National Bank of Omaha and First National Bank of Chicago.

(3) Trial court erred in sustaining objections of defendant First National Banks of Omaha and Chicago to plaintiffs' interrogatories.

(4) Trial court erred in sustaining special appearances of defendant First National Banks of Omaha and Chicago.

I. We consider first plaintiffs' contention trial court erred in sustaining the motion to dismiss their substituted and amended petition filed by First National Bank of Sioux City and Morningside State Bank. The substituted and amended petition contains four divisions, each of which purports to state a separate cause of action. Trial court's ruling on defendants' motion expressly dismissed the entire petition and each division thereof for failure to state a cause of action. Plaintiffs did not plead further. Trial court's order dismissing the substituted and amended petition therefore constitutes a final adjudication from which plaintiffs have properly appealed under the Iowa Rules of Civil Procedure. See Rules 86, 331, Rules of Civil Procedure. See also Vermeer v. Sneller, 190 N.W.2d 389 (Iowa 1971); Allied Concord Financial Corp. v. Hawkeye Lbr. Co., 172 N.W.2d 264 (Iowa 1969). Compare Bigelow v. Williams, 193 N.W.2d 521 (Iowa 1972).

We follow several guidelines in determining whether a given petition states a cause of action. When considering a motion to dismiss, well pleaded, relevant and issuable facts are deemed true, but conclusions not supported by pleaded ultimate facts are not admitted. See Allied Concord Financial Corp. v. Hawkeye Lbr. Co., supra; Hinrichs v. Iowa State Highway Comm., 260 Iowa 1115, 1128, 152 N.W.2d 248, 256 and citations.

When a pleading is attacked before issue is joined by motion to strike out a specified portion of the pleading asserted to contain improper or unnecessary matter as permitted by rule 113, R.C.P., the pleading will be resolved against the pleader.

However, a motion to dismiss a pleading for failure to state a cause of action is sustainable only when it appears to a certainty the pleader has failed to state a claim upon which any relief may be granted under any state of facts which could be proved in support of the claim asserted. In making this determination the pleading should be construed in the light most favorable to the pleader with doubts resolved in his favor and the challenged allegations accepted as true. See Freese v. Lemmon, 210 N.W.2d 576, 580 (Iowa 1973) and citations.

A motion to dismiss is a waiver of any ambiguity and uncertainty in the pleading. Bigelow v. Williams, supra; Case v. Sioux City, 246 Iowa 654, 659, 69 N.W.2d 27, 30; 71 C.J.S. Pleading § 563c, p. 1128 et seq. A motion to dismiss is sustainable only where it appears to a certainty a plaintiff would not be entitled to any relief under any state of facts which could be proved in support of the claims asserted by him. Allied Concord Financial Corp. v. Hawkeye Lbr. Co., supra at 266; Newton v. City of Grundy Center, 246 Iowa 916, 920, 70 N.W.2d 162, 164.

As noted above, plaintiffs' substituted and amended petition contains four divisions, each purporting to state a separate cause of action. The divisions overlap and none is a model of clarity. In Division I, paragraph 10, plaintiffs allege defendants "were engaged in a conspiracy to wrongfully and maliciously, and without probable cause file an involuntary petition in bankruptcy against Power Engineering Co., Inc. . . . ." Elsewhere in Division I plaintiffs allege defendant First National Bank of Sioux City, in furtherance of the conspiracy, induced Power to close a certain checking account it maintained with the bank by drawing and having certified checks payable to unsecured creditors, and then notified the remaining defendant banks, who were secured creditors of Power, of the action taken. Plaintiffs further allege in Division I that on or about the same day the checks were drawn and certified the remaining three banks, in conspiracy with First National Bank of Sioux City, filed without probable cause an involuntary petition in bankruptcy against Power, alleging the corporation committed an act of bankruptcy by drawing and having certified checks payable to unsecured creditors.

Read in the light most favorable to plaintiffs, Division I of their substituted and

amended petition attempts to state a cause of action based on allegations defendants conspired to entice Power into a state of temporary insolvency, whereupon they immediately filed an involuntary petition in bankruptcy charging the corporation committed an act of bankruptcy when it had checks certified and made payable to unsecured creditors, the very act apparently giving rise to its claimed temporary insolvency.

Division II of plaintiffs' amended and substituted petition realleges and incorporates by reference the first eight paragraphs of Division I. In paragraph 15 plaintiffs allege "defendants . . . were engaged in a conspiracy to wrongfully use the processes of the Federal Bankruptcy Act by causing an involuntary petition in bankruptcy to be filed against Power Engineering Co., Inc., after themselves inducing the alleged act of bankruptcy . . . ."

In Division III of their substituted and amended petition plaintiffs allege *inter alia* that as a result of the bankruptcy petition being filed by defendants, Power "was caused to default on its outstanding construction contracts . . . against [its] will." Unlike Division I, Division III contains no allegation Power Engineering's combined assets exceeded its total liabilities at the time bankruptcy proceedings were initiated.

Read in the light most favorable to plaintiffs, Division IV of their substituted and amended petition attempts to state a cause of action for breach of an implied contract of confidentiality. The critical paragraph, paragraph # 26, contains an allegation defendant First National Bank of Sioux City, in furtherance of a conspiracy with the other defendant banks, intentionally and maliciously disclosed to the other banks the details of Power's banking transactions of June 20, 1969, the date upon which the checks payable to Power Engineering's unsecured creditors were certified by First National Bank of Sioux City.

Plaintiffs' substituted and amended petition is replete with allegations of ultimate facts. Reading all four divisions of the petition together and in the light most favorable to plaintiffs it appears they claim defendants conspired to induce Power Engineering to commit a colorable act of bankruptcy by drafting and having certified checks payable to unsecured creditors at a time when Power was bordering on insolvency and then relied on that colorable act of bankruptcy, *viz.*, the giving of a preference, to justify the filing of an involuntary petition in bankruptcy against Power.

Accepting those allegations as true, we believe it cannot be said to a certainty plaintiffs would not be entitled to any relief under any state of facts which could be proved in support of their asserted claims. We must therefore hold trial court erred in sustaining the motions to dismiss of defendants First National Bank of Sioux City and Morningside State Bank. See Allied Concord Financial Corp., *supra*; Newton v. City of Grundy Center, *supra*.

II. The second and third issues presented for review center on plaintiffs' contention trial court erred in denying plaintiffs' application to take depositions of defendant First National Banks of Omaha and Chicago and in sustaining objections of those banks to plaintiffs' interrogatories. These we consider together.

It is clear from the record plaintiffs filed interrogatories and attempted to depone the Omaha and Chicago banks only after the banks had filed special appearances challenging the jurisdiction of the district court. In so specially appearing, the Omaha and Chicago banks relied exclusively on the provisions of 12 U.S.C.A. § 94, which provides as follows:

"Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."

Defendants' objections to the interrogatories plaintiffs sought to propound were in part grounded on a claim none of the interrogatories actually submitted were relevant to the special appearances but also raised the special venue privilege of 12 U.S.C.A. § 94. Their objections to the taking of depositions by plaintiffs, unlike their objections to the interrogatories, did not raise the venue privilege of 12 U.S.C.A. § 94 and contained a prayer that trial court "limit the scope of the depositions . . . to matter pertaining to the special appearance(s)." Trial court overruled plaintiffs' application to take depositions by its order entered February 9, 1973. That order merely cited old Rule of Civil Procedure 141(b), which provided that depositions before answers are all filed may be taken only by leave of court. In its order sustaining defendants' objections to the interrogatories propounded by plaintiffs, trial court expressly relied on 12 U.S.C.A. § 94, ruling the submission of interrogatories constituted a "proceeding" under the statute from which defendants were immune.

On appeal defendants argue the taking of depositions and submission of interrogatories do in fact constitute "proceedings" under 12 U.S.C.A. § 94, and that the special venue protection they claim under the statute serves to immunize them from answering depositions or interrogatories as well.

We have defined "proceedings" to mean "all the steps or measures adopted in the prosecution or defense of an action" and have held the terms generally applicable to any step taken by a suitor to obtain the interposition or action of the court. In re Lamm's Estate, 246 Iowa 300, 304, 67 N.W.2d 613, 615; Bankers' Trust Co. v. Scott, 215 Iowa 1107, 1112, 246 N.W. 836, 838 and citations. As of the date trial court entered its order sustaining defendants' objections to plaintiffs' application to take depositions, that procedure was subject to certain restrictions and required the interposition or action of the court. See old Rule 141(b), R.C.P. The filing of interrogatories after a special appearance had been filed was subject to somewhat lesser restriction, old Rule 121, R.C.P. limiting those interrogatories to issues raised on the special appearance.

▇▇▇ In light of the foregoing there is a measure of logic in defendants' contention the taking of depositions and filing of interrogatories constitute "proceedings" within the intendment of 12 U.S.C.A. § 94. It is abundantly clear, however, a holding by the court to that effect would have bizarre consequences for plaintiffs. As noted in the succeeding division, the special venue privilege of 12 U.S.C.A. § 94 may be waived. Assuming the defendant banks here are otherwise protected by the statute's special venue privilege, it is possible they have by their conduct waived that privilege. To deny plaintiffs the right to depone or submit interrogatories to the banks would be to effectively preclude them from exploring that possibility. In order to prevent such an untenable result, we are impelled to hold the taking of depositions and submission of interrogatories, at least insofar as they relate to the issue of waiver, are not "proceedings" under 12 U.S.C.A. § 94. Accordingly, we hold trial court erred in sustaining defendants' objections to the interrogatories and depositions as they relate to the question of waiver, which is in fact inextricably intertwined with the question of defendants' special appearances.

III. The remaining issue presented for review centers on plaintiffs' contention trial court erred in sustaining the special appearances of defendants First National Bank of Omaha and First National Bank of Chicago.

Both defendants rely entirely on 12 U.S.C.A. § 94 in their special appearances. That statute is set out verbatim hereinabove. The term "any association under this chapter" embodied in 12 U.S.C.A. § 94 refers to national banks.

▇▇▇ We note preliminarily that 12 U.S.C.A. § 94 is a venue statute, having no direct bearing on the question of *jurisdiction* over national banks. Defendant First

National Banks of Omaha and Chicago filed special appearances "for the sole purpose of attacking the jurisdiction of the court", in which plaintiffs' action had been instituted, namely, the district court of Woodbury County. Jurisdiction is of course the only question which is placed before the court by a special appearance. Rule 66, R.C.P.; Kliege v. Iowa Employment Security Comm., 206 N.W.2d 123, 128 (Iowa 1973); Tice v. Wilmington Chemical Corp., 259 Iowa 27, 34, 141 N.W.2d 616, 621, 143 N.W.2d 86. In light of defendants' exclusive reliance on the federal *venue* statute in their special appearance, then, it first appears they improperly invoked the procedure (the filing of special appearances) to challenge venue, not jurisdiction. Before reaching the merits of the court's ruling on defendants' special appearances, the question whether they misused the procedure must be resolved.

▮ Defendant First National Banks of Omaha and Chicago manifestly do not challenge jurisdiction in the same sense or for the reasons non-resident defendants ordinarily challenge jurisdiction by way of a special appearance. See Edmundson v. Miley Trailer Co., 211 N.W.2d 269 (Iowa 1973). Undeniably, the statute upon which they rely refers only to venue. Brumm v. Pittsburgh Nat. Bank, 213 Pa.Super. 443, 249 A.2d 916. Ordinarily, then, it would appear the likely and proper vehicle defendants might employ to raise the venue question would be a motion for change of venue.

This, however, is not the ordinary case. If applicable, 12 U.S.C.A. § 94 stands for the proposition there is no proper venue in Iowa for suit against defendants in view of the fact they are not "established" in the state, *i. e.,* in view of the fact their principal offices and places of business are located elsewhere. See Cope v. Anderson, 331 U.S. 461, 467, 67 S.Ct. 1340, 91 L.Ed. 1602. See also Southeast Guaranty Trust Co., Ltd. v. Rodman & Renshaw, Inc., 358 F.Supp. 1001 (D.C.Ill.1973); Weichert v. American National Bank & Trust Co., 39 A.D.2d 819, 333 N.Y.S.2d 94, and other cases cited n. 1, pp.

82–84 Pocket Part of 12 U.S.C.A. § 1–§ 530. Consequently (and again assuming the applicability of § 94), a motion for change of venue supported by the statute would have served no purpose, the Iowa district court being powerless to change venue to the jurisdictions where those banks were established, Nebraska and Illinois. In light of the foregoing, and in order to avoid a truly anomalous result, defendants' special appearances must be considered the proper procedural vehicles for challenging the venue of Woodbury County District Court.

The Supreme Court decision in Mercantile National Bank at Dallas v. Langdeau, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523, makes it clear the provisions of 12 U.S.C.A. § 94 are mandatory and binding upon state as well as federal courts and ". . . National banks may be sued only in those state courts in the county where the banks are located", that is, where they are "established". See also Fisher v. First National Bank of Omaha, 338 F.Supp. 525, appeal dismsd. 466 F.2d 511 (8 Cir. 1972).

▮ The special venue privilege afforded national banks by 12 U.S.C.A. § 94 is subject to two exceptions. Venue requirements of the statute are inapplicable to actions against national banks that are local in nature. Gregor J. Schaefer Sons, Inc. v. Watson, 26 A.D.2d 659, 272 N.Y.S.2d 790; Robertson v. Burnett, 172 Neb. 385, 109 N.W.2d 716. The right of a national bank to be sued only in that district in which it is established or has its principal place of business may be waived, the privilege of immunity being purely personal and not jurisdictional. Michigan National Bank v. Robertson, 372 U.S. 591, 83 S.Ct. 914, 9 L.Ed.2d 961; Fisher v. First National Bank of Omaha, *supra* ; Buffum v. Chase Nat. Bank of City of New York, 192 F.2d 58 (7 Cir. 1951), cert. den. 342 U.S. 944, 72 S.Ct. 558, 96 L.Ed. 702; Staley v. Homeland, Inc., 368 F.Supp. 1344 (D.C.N.C.1974).

▮ A review of the cases reveals the local action exception has been recognized

only where actions involving national banks are *in rem*. See *e. g.,* Tuthill v. George S. May Intern. Co., 55 Misc.2d 542, 285 N.Y. S.2d 317, affmd. 31 A.D.2d 721, 296 N.Y. S.2d 1021. Such a situation is not presented here and therefore the local action exception cannot be applied to deprive defendants of the special venue privilege afforded by § 94.

■ The question whether the defendant foreign banks have waived the special venue privilege is not so easily resolved. Courts dealing with the question have held a waiver may result from a defendant's failure to timely raise a claim of its venue privilege. See *e. g.,* First National Bank of Bethel v. Pahquioque Bank, 81 U.S. 383, 14 Wall. 383, 20 L.Ed. 840. Central Bank, Nat. Ass'n v. Superior Court for Sacramento Co., 30 Cal.App.3d 962, 106 Cal.Rptr. 912 (1973). Courts have held waiver cannot be inferred from either the commission of a tort by a national bank in a district other than where it was established or the fact the bank was doing business in a foreign district. See Helco, Inc. v. First National City Bank, 470 F.2d 883 (3 Cir. 1972); Northside Iron & Metal Co., Inc. v. Dobson & Johnson, Inc., 480 F.2d 798 (5 Cir. 1973); Douglass v. Industrial Nat. Bank of Rhode Island, 30 Conn.Sup. 117, 303 A.2d 359. Generally, the cases strongly suggest waiver will be found to exist only where the bank fails to timely raise its venue privilege or commits an explicit act clearly manifesting its intention to relinquish it. See Exchange Nat. Bank of Chicago v. Abramson, 45 F.R.D. 97 (D.C. Minn.1968). See cases annotated at n. 8, pp. 85–88, Pocket Part 12 U.S.C.A. § 94.

If the question of waiver were not present in this case, we would be constrained to hold defendants First National Bank of Omaha and First National Bank of Chicago are protected by 12 U.S.C.A. § 94 and proper venue for suit against them cannot lie in any Iowa court. This conclusion would necessarily follow from the fact neither bank was established or located in

Iowa. Because the possibility of waiver does exist, however, any resolution of the venue/jurisdiction question before plaintiffs are afforded an opportunity to submit interrogatories and depositions directed at the possibility of waiver would be premature. Accordingly, we hold trial court erred in sustaining the special appearances of the First National Bank of Omaha and First National Bank of Chicago.

We conclude trial court erred in sustaining motions of defendants First National Bank of Sioux City and Morningside State Bank to dismiss plaintiffs' substituted and amended petition. Trial court also erred in denying plaintiffs' application for permission to take depositions of defendants First National Bank of Omaha and First National Bank of Chicago, and in sustaining objections of those banks to plaintiffs' interrogatories. Finally, we hold trial court erred in sustaining the special appearances of defendants First National Bank of Omaha and First National Bank of Chicago.

We reverse and remand with instructions to trial court to permit plaintiffs to submit interrogatories and depositions to First National Bank of Omaha and First National Bank of Chicago directed solely to those issues raised by their special appearances and in particular to any matters relating to the question whether the banks by their conduct may have waived the special venue privilege of 12 U.S.C.A. § 94.

Reversed and remanded with directions.

MOORE, C. J., and UHLENHOPP and REYNOLDSON, JJ., concur.

MASON, J., concurs in Division I but dissents from Divisions II and III.