**GOUMAS v. K. KARRAS & SON.**
**THE KARRAS et al.**

District Court, S. D. New York.
June 14, 1943.

David P. Siegel, of New York City, for libelant.

Reid, Cunningham & Freehill, of New York City (Frederick H. Cunningham, of New York City, of counsel), for respondents.

BRIGHT, District Judge.

The claimant excepts to the libel on the ground that the facts averred are insufficient to constitute a cause of action, do not constitute a cause of action within maritime jurisdiction, and do not give rise to any maritime lien. Libelant is a ship chandler, and provides supplies and personnel to merchant vessels when employed so to do. He alleges that the master of the SS "Karras" requested him to supply fourteen seamen for service thereon, and at the time represented that the vessel was fit and seaworthy and the seamen's living quarters fit and habitable. He further alleges that the respondents well knew at that time that the ship was not seaworthy or habitable, but, on the contrary, was filthy and abounded in vermin; that he relied upon the representations so made by the master and provided the personnel requested, after repeating to them the representations mentioned; that the seamen were transported to Montreal, where the ship was lying, that the men there found that the ship was not habitable and refused to proceed as they had agreed; that they then found themselves stranded and without money, lodged complaints with the authorities against respondents and libelant, as a result of which libelant was compelled to take steps to find positions for the men on other vessels, to retain counsel to defend himself in proceedings arising upon the charges made against him, and spend money in further transportation and maintenance; that his office was picketed and boycotted by a local organization of merchant seamen, and he suffered in his good name and reputation to his business detriment and disadvantage, all to his damage in the sum of $25,000. He prays that process issue against respondent in personam, and against the ship, which he asks be condemned to pay his damages and costs, and for other relief.

The complaint obviously is for an alleged breach of warranty in the making of a contract to furnish a crew. I do not think that such a contract would be a maritime one.

It seems clear that it is not all contracts relating to ships that hypothecates a vessel for their performance. The lien is a secret one which may operate to the prejudice of general creditors and purchasers without notice; it is, therefore, stricti juris, and cannot be extended by construction,

analogy or inference. Osaka Shoshen Kaisha v. Lumber Co., 260 U.S. 490–497, 43 S.Ct. 172, 67 L.Ed. 364.

In Cory Bros. & Co. v. United States, 2 Cir., 51 F.2d 1010, 1012, a libel was filed to recover of the United States expenses incurred by libelant in defending a suit in which it was impleaded. The libel was dismissed, and the Circuit Court of Appeals affirmed. The suit in which it was impleaded was one brought against a steamship to recover damages to a shipment of flour. The United States, the owner of the ship, employed, among others, Cory Brothers to act as agents of the vessel in discharging the cargo. In the original suit, a decree was rendered, exonerating Cory from fault in the discharge of the cargo. Thereupon Cory filed the present libel upon the theory that by reason of its employment as agent to attend to the discharge, the United States became obligated to reimburse it for expenses incidental to such employment, including the attorneys' fees and disbursements it had incurred in the previous suit. Exceptions were filed on the ground that no cause of action in admiralty was alleged. They were sustained, and on appeal, the decision of the lower court affirmed, Judge Swan writing:

"If the contract merely employed libelant to procure maritime services instead of obligating it to perform them itself, it may well be that a suit to recover compensation and disbursements would be not of maritime cognizance. Such a distinction has been frequently observed. Thus, while a contract for the charter of a ship is clearly maritime in nature, a contract creating an agency to obtain charterings has been held nonmaritime. (Citing cases) * * * The same has been held as to a contract with an agent to procure crews, The Retriever, D.C.W.D.Wash., 93 F. 480; insurance on a ship, Marquardt v. French, D. C.S.D.N.Y., 53 F. 603; freight and passengers,· (citing cases). * * * The rationale has been thus stated: 'The distinction between preliminary services leading to a maritime contract and such contracts themselves has been affirmed in this country from the first, and not yet departed from. It furnishes a distinction capable of somewhat easy application. If it be broken down, I do not perceive any other dividing line for excluding from the admiralty many other sorts of claims which have a reference, more or less near or remote, to navigation and commerce. If the broker of a charter-party be admitted, the insurance broker must follow,—the drayman, the expressman, and all others who perform services having reference to a voyage either in contemplation or executed.' Brown J., in The Thames, D.C., 10 F. 848. See, also, The Harvey and Henry, 2 Cir., 86 F. 656; 1 Benedict, Admiralty (5th Ed.) § 62. Apparently the same ground explains the decision in Minturn v. Maynard, 17 How. 477, 15 L.Ed. 235, where the libelant had been employed by the shipowner as general agent and had expended money for supplies, repairs, and advertising of the ship. The suit was for disbursements and commissions, and it was held that the agent's remedy was not a libel in admiralty, but a suit in assumpsit. (Citing cases) * * *

"It is difficult, if not impossible, to distinguish Minturn v. Maynard from the case at bar, and that decision would seem to be a controlling authority against admiralty jurisdiction of the present suit. Moreover, the appellee invokes the principle that, even if the contract was maritime in so far as it related to attending to discharge of cargo, admiralty will not take jurisdiction of non-maritime transactions arising subsequent to the execution of a maritime contract."

■ In The Humboldt, D.C., 86 F. 351, it was held that a contract giving a person entire control of the passenger and freight business of a ship and constituting him general passenger and freight agent, was not maritime, nor was an agreement to solicit business for a ship and to act as agent in making maritime contracts. A claim for a lien for commissions was held not good on the theory that the services were to be performed on land and were similar to the ordinary contract of solicitors, ship brokers and business agents who have no part in the navigation of vessels. Shipping agents employed to procure crews for vessels are not entitled· to a lien upon the vessels for their commissions. The Retriever, D.C., 93 F. 480. A contract to work on the ship is, of course, maritime. Union Fish Co. v. Erickson, 248 U.S. 308, 39 S.Ct. 112, 63 L.Ed. 261, but not a contract to procure someone so to work. Cory Bros. & Co. v. United States, supra. And it seems to be well settled that a claim for breach of warranty in furnishing coal, which, because of its heating qualities was

not fit for ballast for which it is obtained, is not maritime; Aktieselkabet Fido v. Lloyd Brazileiro, D.C., 267 F. 733, 738, affirmed 2 Cir., 283 F. 62–74, certiorari denied 260 U.S. 737, 43 S.Ct. 97, 67 L.Ed. 489; nor is one for fraud or misrepresentation inducing libelant to enter into a contract; Gronvold v. Suryan, D.C., 12 F. Supp. 429; nor is one for relief from a fraudulent contract, St. Paul F. & M. Insurance Co. v. Petroleum Navigation Co., D.C., 35 F.Supp. 350.

Here the contract under which suit is brought was clearly a land contract to furnish seamen. The maritime contract, if any, was that made by the seamen for work upon the ship. The suit here is not for commissions in furnishing these men; it is for damages arising subsequent to their tender of service, for nothing that happened upon the ship, but solely for special damages alleged to have been sustained by the libelant after the maritime contract, if any, was performed or attempted to be performed, because of an alleged misrepresentation or warranty made prior to the commencement of such maritime service.

Libelant claims that Section 971 of Title 46 U.S.C.A. gives him a lien. That section provides that: "Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel * * * upon the order * * * of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem". But it has been held that that act made no change in the general principles of law as to maritime liens. New Bedford Co. v. Purdy, 258 U.S. 96–100, 42 S.Ct. 243, 66 L.Ed. 482; The Dredge A, D.C., 217 F. 617–629. And under that very statute, it was held that a broker was not entitled to a lien for services in shipping a crew in a home port on the theory that such services are necessaries. The Princess, D. C., 12 F. 2d 808. In that case, attention was called to the conflict of authorities, and Judge Augustus N. Hand suggested that the words "other necessaries" must be read in the light of the words "repairs, supplies". However that may be, the recovery here sought is not for compensation in furnishing a crew, but for alleged damages arising subsequent to their refusal to serve.

For the reasons stated, therefore, the exceptions are sustained and the libel dismissed, with costs.