**P. D. MARCHESSINI & CO., (NEW YORK) Inc., Libelant,**

v.

**PACIFIC MARINE CORPORATION, Respondent.**

**No. 61 AD. 1375.**

United States District Court
S. D. New York.

March 4, 1964.

Poles, Tublin & Patestides, New York City, proctors for libelant, John G. Poles, New York City, of counsel.

Burlingham, Underwood, Barron, Wright & White, New York City, proctors for respondent, Burton H. White, E. Lisk Wyckoff, Jr., New York City, of counsel.

WEINFELD, District Judge.

The respondent moves to sustain its exceptions to, and to dismiss, the libel upon the ground that the cause of action set forth therein and the agreement upon which it is based are nonmaritime and not within the admiralty jurisdiction of this Court.

The libel alleges an agreement whereby respondent was to act as agent for ships designated by libelant; that pursuant thereto libelant gave respondent funds to be disbursed in connection with such vessels; that respondent collected freights for libelant; that respondent failed to keep its obligations under "said general agency agreement and render an accounting * * * to libelant of the funds placed in trust and collected on behalf of libelant." Damages are alleged in the sum of $45,000 and upon the commencement of the libel a foreign attachment was issued against funds allegedly belonging to respondent in this District.

The respondent's exceptions are twofold:

(1) that an accounting of funds under a general agency agreement is not a *cause of action within the admiralty jurisdiction of this Court*, and

(2) that the agreement itself upon which the cause of action is based is nonmaritime and not within the admiralty jurisdiction of this Court.

The libelant, recognizing that admiralty will not take jurisdiction of a claim for an accounting as such, argues that the basic contract is maritime, and that the accounting is only incidental thereto and hence within the Court's jurisdiction.[1] The Court is of the view that the exceptions must be sustained and the libel dismissed for lack of jurisdiction.

■ The mere fact that the services to be performed under a contract relate to a ship or its business, or that a ship is the object of such services, does not, in and of itself, mean they are maritime. The test to be applied in deciding whether or not a contract is maritime is its nature and subject matter.[2]

■ Accordingly, we turn to the agreement. First, under its terms, libelant appointed respondent as General Agent for Japan with respect to designated vessels. The authorities have long and consistently held that a general agency agreement is not maritime in nature.[3] Indeed the rule is so firmly entrenched that when our Court of Appeals was pressed to reconsider the matter, it stated that if any overruling of the doctrine were to be done, "only the Supreme Court should do it."[4]

Next, analysis of the specific functions which respondent was required to perform under the agency agreement indicates they are preliminary services of the type uniformly held to be nonmaritime. This Circuit, as well as others, over an extended period, has recognized a "distinction between preliminary services leading to a maritime contract and such contracts themselves." The underlying rationale is that although the nonmaritime services rendered pertain to the business of a ship, their essential character is no different from that ordinarily performed by any ship's broker, business agent, clerks or other shoreside employees who have no part in the navigation or operation of the ship. The holdings in the main have relied upon the classical and oft-quoted statement of Judge Addison Brown in The Thames:

"The distinction between preliminary services leading to a maritime contract and such contracts themselves have been affirmed in this country from the first, and not yet departed from. It furnishes a distinction capable of somewhat easy

1. See W. E. Hedger Transp. Corp. v. Ira S. Bushey & Sons, 155 F.2d 321, 323 (2d Cir.), cert. denied, 329 U.S. 735, 67 S. Ct. 100, 91 L.Ed. 635 (1946) and authorities there cited.

2. North Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co., 249 U.S. 119, 125, 39 S.Ct. 221, 63 L.Ed. 510 (1919); Insurance Co. v. Dunham, 78 U.S. (11 Wall.) 1, 26, 20 L.Ed. 90 (1870); Cory Bros. & Co. v. United States, 51 F.2d 1010 (2d Cir. 1931).

3. Minturn v. Maynard, 58 U.S. (17 How.) 477, 15 L.Ed. 235 (1854); Admiral Oriental Line v. United States, 86 F.2d 201 (2d Cir. 1936) (L. Hand, J.); The Humboldt, 86 F. 351 (D.Wash.1898).

4. Admiral Oriental Line v. Atlantic Gulf & Oriental S.S. Co., 88 F.2d 26, 27 (2d Cir. 1937).

application. If it be broken down, I do not perceive any other dividing line for excluding from the admiralty many other sorts of claims which have a reference, more or less near or remote, to navigation and commerce. If the broker of a charter-party be admitted, the insurance broker must follow,—the drayman, the expressman, and all others who perform services having reference to a voyage either in contemplation or executed." [5]

Against this background we consider each specific function which respondent was called upon to perform under the agreement. Respondent was to "make suitable arrangements for the husbanding of vessels and solicitation of cargoes." The cases are uniform that such services are not maritime but of a nature preliminary to a maritime contract.[6] Here the respondent's service is even of a more dubious nature, since it was "to make suitable arrangements" for husbanding and solicitation of cargo. Contracts to "procure" crews, cargo and insurance have all been deemed nonmaritime.[7] But even if the respondent, instead of "making suitable arrangements" for husbanding, itself performed those services, they still fall within the preliminary or nonmaritime category under the authorities. As stated in Erlandson v. Commissioner: "The general agency agreement in effect placed upon the company the duties of a ship's husband. By this is meant one who has been engaged to take care of the shoreside business of the ship and who has no part in the actual management or navigation of the vessel." [8]

Respondent also was "to collect freights and other receipts * * * and * * * to pay and incur charges considered normal for the proper husbanding of vessels and cargo solicitation." The collection of freight on cargo placed aboard the vessel or of receipts for passenger hire falls within the compass of required duties as the ship's husband. These shoreside functions were not converted from their preliminary character as nonmaritime to maritime merely because freight moneys derived from the ships' voyages were involved. Even an express agreement under which one is to share in the freight for procuring a charter-party has been held to be nonmaritime.[9] There is correspondingly less reason to conclude an agent's services are maritime where he has no direct interest in the proceeds of freight collection but collects them for the owner who is entitled to all the proceeds.

The remaining provisions of the agreement required respondent as agent to submit regular accounts after the sailing of each vessel from Japan, and also set forth the terms of compensation for respondent based upon commissions for booking and handling of general and bulk cargo booked by respondent and a handling commission for general cargoes not booked by it. The libelant urges that the latter services, taken with those previously enumerated, that is, the totality of all services, creates a "general agency for management, operation and maintenance of a vessel." However, this position disregards the express terms of the agreement which define the duties of respondent. The fact is that they in no wise refer to or impose any duty upon

---

5. 10 F. 848 (S.D.N.Y.1881).

6. The Harvey and Henry, 86 F. 656 (2d Cir. 1898); The Crystal Stream, 25 F. 575 (S.D.N.Y.1885).

7. Cory Bros. & Co. v. United States, 51 F.2d 1010 (2d Cir. 1931); Goumas v. K. Karras & Son, 51 F.Supp. 145 (S.D.N.Y. 1943), aff'd, 140 F.2d 157 (2d Cir.), cert. denied, 322 U.S. 734, 64 S.Ct. 1047, 88 L. Ed. 1568 (1944); The Retriever, 93 F. 480 (W.D.Wash.1899).

8. 277 F.2d 70, 71 (9th Cir. 1960). See also, Aird v. Weyerhaeuser S. S. Co., 169 F. 2d 606, 608 n. 2 (3d Cir. 1948), cert. denied, 337 U.S. 959, 69 S.Ct. 1521, 93 L. Ed. 1758 (1949); McCready v. Thorn, 51 N.Y. 454, 457–58 (1873).

9. Rhederei Actien Gesellschaft Oceana v. Clutha Shipping Co., 226 F. 339 (D.Md. 1915).

respondent with respect to the operation of a vessel. The agreement does not provide, and nothing contained therein warrants, any claim that respondent has any part in the navigation or management of a vessel as distinguished from servicing it as ship's husband while at port. And it is this circumstance which at once makes inapposite the cases which libelant stresses, such as Hadjipateras v. Pacifica, S. A.,[10] (the owner had engaged another to manage and operate the vessel); United Fruit Co. v. United States Shipping Bd. Merchant Fleet Corp.,[11] (plaintiff was appointed by the shipowner as its "agent for the operation" of the vessels); Flota Maritima Browning De Cuba, Sociadad Anonima v. The Ciudad De La Habana,[12] (agreement also "contained certain provisions for the operation of the vessels by Libelant similar to those customarily contained in bareboat charters"); Metropolitan S. S. Co. v. Pacific-Alaska Nav. Co.,[13] (the vessels were operated for a term of years under a charter-party—a maritime service—and the accounting was incidental thereto).

Finally, the libelant urges that the cases referred to hereinabove and others, which long adhered to the view that the services of the type which respondent rendered were of a nonmaritime nature, are either "hangovers" from the old English "locality test," or superficial "pigeonhole" classifications, and that the doctrinal trend is away from such concepts, citing recent rulings of the Supreme Court on admiralty jurisdiction.[14] An identical argument was advanced only recently by present counsel in another

suit, and upon analysis was found without substance.[15]

In conclusion, the basic agreement here was nonmaritime and the claimed breach thereof for which an accounting is sought is therefore not incidental to a transaction which was essentially maritime, and this Court is without jurisdiction; accordingly the libel is dismissed.

---

10. 290 F.2d 697 (5th Cir. 1961).

11. 42 F.2d 222 (D.Mass.1930).

12. 181 F.Supp. 301 (D.Md.1960).

13. 260 F. 973 (S.D.Me.1919).

14. Sword Line, Inc. v. United States, 351 U.S. 976, 76 S.Ct. 1047, 100 L.Ed. 1493 (1956) (mem.) (admiralty jurisdiction in quasi contract upheld); Archawski v. Hanioti, 350 U.S. 532, 76 S.Ct. 617, 100 L.Ed. 676 (1956) (libel for moneys wrong-

fully withheld allowed); Swift & Co. Packers v. Compania Colombiana Del Caribe, S. A., 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950) (admiralty court allowed to set aside fraudulent transfer in attachment proceedings); Krauss Bros. Lumber Co. v. Dimon S. S. Corp., 290 U. S. 117, 54 S.Ct. 105, 78 L.Ed. 216 (1933) (lien for erroneous overpayment of freight allowed in admiralty).

15. See Economu v. Bates, 222 F.Supp. 988, 991–92 (S.D.N.Y.1963).