**BERGEN SHIPPING CO., LTD.,**
Plaintiff,

v.

**JAPAN MARINE SERVICES, LTD.,**
Defendant.

No. 74 Civ. 3160 (WCC).

United States District Court,
S. D. New York.

Nov. 26, 1974.

George L. Graff, and Robert Thomajan, New York City, Milgrim, Thomajan & Jacobs, P. C., New York City, for plaintiff.

George Yamaoka, Stephen J. Murray, and John T. MacDermott, New York City, Hill, Betts & Nash, New York City, for defendant.

## MEMORANDUM AND ORDER

CONNER, District Judge:

This is an action to recover money damages for injuries allegedly sustained when Japan Marine Services, Ltd. ("JMS") breached its agreement to provide a crew for the SS Yukon Mart, a bulk cargo vessel owned by plaintiff Bergen Shipping Co., Ltd. ("Bergen").

The action first came before the Court on Bergen's *ex parte* application for leave to serve JMS in Japan by Telex, and to depose the crew of the vessel. Since the performance of the crew was the crucial issue in the lawsuit and the crew was about to depart from the United States and be reassigned to vessels in international commerce, the application was granted.

Immediately thereafter, JMS appeared to contest the jurisdiction of this Court and moved to have the order vacated on the grounds that Bergen had no reasonable basis for invoking the Court's jurisdiction and that the parties had an agreement to arbitrate its disputes. In view of the exigency of the circumstances, the Court ruled that the depositions were to go forward as scheduled without prejudice to any of JMS' rights. The Court further ruled that the transcripts were to be unavailable to either party pending resolution of JMS' jurisdictional claims.

Subsequently, JMS moved pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for an order dismissing the complaint on the grounds that this action is not within either the admiralty or the diversity jurisdiction of the Court. It has also moved pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, to quash service on the ground that the Court lacks jurisdiction over its person.

The parties have agreed that the action should be dismissed without prejudice pending the outcome of an arbitration proceeding now scheduled to commence in Tokyo. However, because defendant has claimed that plaintiff invoked the jurisdiction of this Court in bad faith, and that it attended the depositions in reliance on this Court's direction that it would not forfeit its existing rights, it is necessary to pass on defendant's pending motions which seek an order that the deposition transcripts cannot be used in the arbitration or in any other proceedings between the parties.

### I.

This action arises out of a decision by Bergen, a Liberian corporation having its principal place of business in New York, to obtain a Japanese crew for its vessel, the SS Yukon Mart. In accordance with Japanese practice, Bergen arranged for JMS, a "marine service company," to supply the crew.

The parties agreed that JMS would negotiate a labor agreement with the All Japan Seamen's Union, and furnish a crew in accordance with the terms of that agreement. JMS further agreed that it would,

"effect payment of all reasonable allotments from wages to beneficiaries directly or through such channels as may be customary and agreed by the employee . . . . [And] effect payment of wages to employees when the vessel is in Japan . . . ."

In March, 1974 the president of the seamen's union presented JMS with a proposal to revise the original agreement. Eventually, Mr. Hosaka, JMS' Director and Section Chief of the Manning Section, came to the United States for two days to meet with the crew. Negotiations continued until July 10, 1974 when the crew ceased work. On July 24, 1974 Bergen obtained permission to depose the crew with respect to its refusal to perform any further duties.

### II.

In support of its jurisdictional objections JMS contends that this Court's jurisdiction may not be based on 28 U.S.C. § 1332.

Section 1332(a) provides:

"The district courts shall have original jurisdiction of all civil actions

where the matter in controversy exceeds the sum or value of $10,000 . . . and is between—

(1) citizens of different States;

(2) citizens of a State, and foreign states or citizens or subjects thereof; and

(3) citizens of different States and in which foreign states or citizens or subjects thereof are additional parties."

It is beyond dispute that this section does not confer jurisdiction on the federal courts in suits between aliens. Hodgson v. Bowerbank, 5 Cranch 303, 3 L.Ed. 108 (1809); Willems v. Barclays Bank D.C.O., 263 F.Supp. 774, 775 (S.D.N.Y. 1966); Mazzella v. Pan Oceanica A/S Panama, 232 F.Supp. 29, 31 n.1 (S.D.N.Y.1964). Plaintiff contends, however, that Section 1332(c) provides an exception which allows a foreign corporation which has its principal place of business in one of the United States to sue another foreign corporation. The language Bergen relies on in Section 1332(c) provides that, for purposes of Section 1332,

"a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

Although the proper interpretation of Section 1332(c) has been the subject of a substantial body of commentary,[1] there is little case law on point.

The seminal case in this area is Eisenberg v. Commercial Union Assurance Co., 189 F.Supp. 500 (S.D.N.Y.1960). In *Eisenberg*, an action by a New York citizen against a British corporation with its principal place of business in London, Judge Dimock ruled that diversity jurisdiction would attach despite the fact that defendant's principal place of business in the United States was in New York. Thus, the precise ruling of *Eisenberg* is that an alien corporation which has its principal place of business outside the United States will not be deemed a citizen of the State in which it has its principal U.S. place of business. However, in dictum, Judge Dimock stated:

"Unless a corporation is incorporated by a State of the United States it will not be deemed a citizen of the State where it has its principal place of business." 189 F.Supp. at 502.

In support of his decision, Judge Dimock noted that the statute apparently distinguishes States of the United States from foreign states by spelling the former with a capital S and the latter with a lower case s. Thus, the Court ruled that subdivision (c) only applies to corporations incorporated in the United States. Curiously, however, in illustrating his point, Judge Dimock used an example which contradicted this dictum. He stated that,

"if a Bahamian corporation . . . has located its principal place of business in New York, the inference is legitimate that it has adopted New York as its actual residence and that it is no longer entitled to be considered an outsider and to deserve the protection accorded outsiders." 189 F.Supp. at 502.

In Chemical Transportation Corp. v. Metropolitan Petroleum Corp., 246 F. Supp. 563 (S.D.N.Y.1964), Judge Cooper applied *Eisenberg* to a case in which the plaintiff was a Liberian corporation and the defendants were New York citizens. The Court ruled that even if plaintiff's principal place of business was in New York, diversity jurisdiction existed since 28 U.S.C. § 1332(c) does not apply to alien corporations.

1. American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts § 1301 at 111–114 (1969); Currie, The Federal Courts and the American Law Institute, 36 U.Chi.L.Rev. 1, 37 (1968); Moore & Weckstein, Corporations and Diversity of Citizenship Jurisdiction: A Supreme Court Fiction Revisited, 77 Harv. L.Rev. 1426, 1436 (1964); 1 Moore, Federal Practice, ¶ 0.77 [2.–3], (2d ed. 1974); Friendly, Federal Jurisdiction: A General View at 139–152 (Columbia University Press 1973); Wright, Law of Federal Courts, at 91 (2 ed. 1970).

The defendants in *Chemical* had sought to defeat jurisdiction by offering proof that plaintiff's principal place of business was in New York, and that all the parties were therefore New York citizens within the meaning of 28 U.S.C. § 1332(c). The Court, recognizing that the issue was as yet unresolved, found Judge Dimock's analysis of the statutory language compelling, and sustained jurisdiction.

In two subsequent decisions, Judge Cooper followed his holding in *Chemical*.[2] Willems v. Barclays Bank D.C.O., *supra*; Tsakonites v. Transpacific Carriers Corp., 246 F.Supp. 634, 641 (S.D.N.Y.1965).

Although the principle established by this line of cases was challenged by several noted authorities on federal jurisdiction,[3] there was no further development in the case law until the recent opinion in Southeast Guaranty Trust Co. v. Rodman & Renshaw, Inc., 358 F.Supp. 1001 (N.D.Ill.1973). See Centraal Stikstof Verkoopkantoor N.V. v. Pensacola Port Authority, 205 F.Supp. 724, 725 (N.D.Fla.1962), aff'd 316 F.2d 189 (1963).

In *Southeast*, defendants, Illinois citizens, contended that there was no diversity jurisdiction since plaintiff, a Bahamian corporation with its principal place of business in Illinois, was also an Illinois citizen. Plaintiff, on the other hand, relying on *Chemical, supra*, maintained that federal jurisdiction existed because as a foreign corporation, it was only a citizen of the foreign state in which it was chartered.

The Court rejected plaintiff's contention and ruled that Section 1332(c) applies to foreign corporations whose principal place of business is located in the United States. This Court is constrained to follow this result and respectfully disagree with the result reached in *Chemical* and its progeny.

Although Congress apparently did not consider alien corporations when it amended Section 1332 to provide that a corporation is a citizen of the state of its incorporation as well as the state of its principal place of business,[4] it is clear that the same rationale which precludes out-of-state but locally based corporations from invoking federal jurisdiction against locally incorporated corporations would preclude alien, but locally based corporations, from invoking such jurisdiction.[5]

Indeed, Congress specifically sought to eliminate the

> "evil whereby a local institution, engaged in a local business and in many cases locally owned, is enabled to bring its litigation into the Federal courts simply because it has obtained a corporate charter from another State." 1958 U.S.Code Cong. and Admin.News, pp. 3099, 3101–3102.

In view of this overriding policy, this Court is compelled to conclude that a corporation, be it alien or otherwise, with its principal place of business in a State should be deemed a citizen of that State.[6]

2. See also Mazella v. Pan Oceanica A/S Panama, 232 F.Supp. 29, 31 n. 1 (S.D.N.Y. 1964) where the Court found there was apparently no diversity jurisdiction. Although the record did not disclose the defendant's principal place of business, the Court, relying on *Eisenberg* found that to be immaterial.

3. American Law Institute Study; Currie; Wright; Moore & Weckstein, *supra* note 1; *cf.* Friendly *supra* note 1.

4. 1958 U.S.Code Cong. and Admin.News pp. 3099, 3101–3102; see Southeast Guaranty Trust Co. v. Rodman & Renshaw, Inc., 358 F.Supp. 1001, 1007 (N.D.Ill.1973); 1 Moore,

*supra*, ¶ 0.77 [2.–3], at 717.44; Wright, Law of Federal Courts, *supra* at 91.

5. See *supra* n. 4.

6. The American Law Institute has proposed that an "alien corporation with its principal place of business in a state" be deemed "a citizen of that state as well as the foreign country by which it has been incorporated." American Law Institute, Study, *supra* § 1301 at 111–114. *Cf.* Judge Friendly's endorsement of the ALI proposal that a corporation be considered an "in-stater" if it has for a period of two years maintained a local establishment in a state. Friendly, *supra* at 151 n. 49.

While we are cognizant that the application of the *Southeast* rule in the present case would enlarge federal jurisdiction, rather than restricting it, which was the underlying purpose of Section 1332(c), and the result of the *Southeast* decision, it at least is not inconsistent with the *stated* purpose of the statute, i.e., eliminating the "evil" of allowing purely local controversies to be resolved in the federal courts.

■ In any event, this is not determinative of the jurisdictional claims, because, as discussed hereinafter, this action is cognizable under the admiralty jurisdiction of the Court, which encompasses suits between aliens even if the transactions in controversy arose outside the United States. Canada Malting Co. Ltd. v. Paterson Steamships, Ltd., 285 U.S. 413, 420, 52 S.Ct. 413, 76 L.Ed. 837 (1932); Odita v. Elder Dempster Lines, Ltd., 286 F.Supp. 547, 549 (S.D.N.Y. 1968); 1 Benedict, Admiralty, § 216 (7th ed. 1974).

### III.

JMS contends that admiralty jurisdiction cannot be founded upon a contract to furnish a crew. Bergen, on the other hand, concedes that a contract merely to furnish a crew is non-maritime, but asserts that the contract in dispute involved JMS in the day-to-day operation of the vessel, and therefore, is clearly within this Court's admiralty jurisdiction.

It has been stated that to determine whether admiralty jurisdiction lies, "[t]he only question is whether the transaction relates to ships and vessels, masters and mariners, as the agents of commerce, on navigable waters." 1 Benedict, *supra*, § 182 at 11–5. This standard is "exceedingly broad," Kossick v. United Fruit Co., 365 U.S. 731, 736, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961), and lends itself to many varied interpretations. See 7A Moore, Federal Practice ¶ .245 [2], at 2980, ¶ .225 et seq. (2d ed. 1972). Thus, the Supreme Court has stated, "[t]he boundaries of admiralty jurisdiction over contracts . . .

have always been difficult to draw." Kossick v. United Fruit Co., *supra* at 735, 81 S.Ct. at 890; see Cory Bros. & Co. v. United States, 51 F.2d 1010, 1011 (2d Cir. 1931).

■ The general rule is that an agreement to procure a crew is not deemed maritime in nature. Goumas v. K. Karras & Son, 51 F.Supp. 145 (S.D. N.Y.1943), aff'd, 140 F.2d 157 (2d Cir. 1944); P. D. Marchessini & Co. v. Pacific Marine Corp., 227 F.Supp. 17, 19 (S.D.N.Y.1964); 7A Moore, *supra* ¶ .250 at 3001; 1 Benedict, *supra*, § 187 at 11–33. Nevertheless, an examination of the applicable case law reveals that every case turns on its individual facts. The leading case is Goumas v. K. Karras & Son, *supra*. There, Goumas entered into an agreement to furnish a crew for the SS "Karras" on her master's representation that the vessel was fit and seaworthy. The seamen were transported to the vessel in Montreal and when they arrived, the vessel was found to be filthy and laden with vermin. The crew refused to board the ship and thus found themselves stranded and without money. As a result, they picketed Goumas' office and lodged complaints against him. Goumas was required to find new positions for the seamen, spend money for their further transportation and maintenance, and retain counsel to defend himself in the proceedings brought on the charges against him. This factual background gave rise to the action against Karras. The action upon which Goumas sought to base admiralty jurisdiction was actually to redress damage to his reputation and business—damage sustained "after the maritime contract, if any, was performed . . . ." 51 F. Supp. at 147.

■ Neither *Goumas* or the other cases relied on by JMS, see *e. g.*, P. D. Marchessini & Co. v. Pacific Marine Corp., *supra*, involved situations where the action arose out of an alleged breach of an agreement whereby a defendant was implicitly involved in the failure of a crew to perform or a ship to sail. In-

deed, JMS was contractually obligated to attempt to effect a compromise with the crew (through the Union) in the event of any grievance or demand as to "daily life on board" the ship. Labor Agreement, Article XVIII. See 1 Benedict, *supra* § 181 at 11–2.[7] Thus, this action is more than for breach of a contract to furnish a crew. Furthermore, the issues in contention are clearly "an integral part of . . . maritime commerce and, consequently, should be cognizable within the admiralty jurisdiction of the district courts." 7A Moore, *supra*, ¶ .250 at 3006; see Hinkins Steamship Agency v. Freighters, Inc., 351 F.Supp. 373, 375 (N.D.Cal.1972).

### IV.

JMS' final contention is that this Court lacks jurisdiction over its person inasmuch as the contract was negotiated entirely in Japan by Japanese nationals and residents and merely executed by Bergen in New York. It further contends that Mr. Hosaka came to the United States at the request of the Captain of the SS Yukon Mart and merely went to New York to receive instructions as to the negotiations. Bergen, on the other hand, asserts that it was advised that Mr. Hosaka was scheduling a trip to the United States, and that when he came to New York, two lengthy meetings took place at which crucial decisions were made giving rise, in effect, to a new agency agreement. It contends that these substantial New York contacts, out of which the action arises, are sufficient to subject JMS to the jurisdiction of the New York Courts.

■ It is not possible, on the record before the Court, to determine to what extent, if any, the contract has a New York nexus. To resolve this issue, an evidentiary hearing would be necessary. Since the parties have agreed that the action should be dismissed pending arbitration, it is highly questionable whether the court should retain jurisdiction for the sole purpose of determining whether the depositions already taken should be declared a nullity. Indeed, JMS has not supplied, nor have we found, cases where depositions taken in an action subsequently declared to be outside the jurisdiction of the Court have been so declared.

Moreover, the Court does not view with favor an attempt to achieve a result which would not only be wasteful but would also suppress evidence which, because the seamen who were deposed have since become dispersed, might, as a practical matter, never again be available.[8]

The parties are directed to settle a proposed order dismissing the action without prejudice pending arbitration. Defendant's motion is otherwise denied.

So ordered.

---

7. Benedict has stated that:
   "Delays occasioned to the ship by cargo owners or others, and the recovery of compensation or damages therefor are within the jurisdiction of the admiralty."
   1 Benedict, Admiralty, § 181 at 11–2 (7th ed. 1974).

8. Although courts have generally denied discovery on the subject matter of a dispute to be arbitrated, 7 Moore, *supra*, ¶ 81.05 [7] at 81–82, the law in New York is that it may be ordered in exceptional circumstances. Brigge Crane and Rigging Co. v. Docutel Corp., 371 F.Supp. 240 (E.D.N.Y.1973);

Penn Tanker Co. v. C.H.Z. Rolimpex, Warszawa, 199 F.Supp. 716 (S.D.N.Y.1961); Application of Katz, 3 A.D.2d 238, 160 N.Y.S. 2d 159 (A.D. 1st Dept.1957).
   The rule is that there must be a showing of extraordinary circumstances. "Necessity rather than convenience should be the test." Application of Katz, *supra* at 160–161.
   This was clearly a case of extraordinary circumstances. The allegations to the effect that the crew was about to leave the United States and be reassigned to vessels in international commerce were sufficient to meet the test of necessity.