Charles William ROBY and Elizabeth Roby

v.

GENERAL TIRE & RUBBER COMPANY, an Ohio Corporation and General Accident Fire & Life Assurance Corporation.

Civ. No. K–80–599.

United States District Court, D. Maryland.

Sept. 26, 1980.

Leonard A. Orman, Baltimore, Md., for plaintiffs.

Hartman J. Miller and Eugene A. Edgett, Jr., Baltimore, Md., for General Tire & Rubber Co., defendant.

Barry Bach, Jeffrey J. Plum and Smith, Somerville & Case, Baltimore, Md., for General Acc. Fire & Life Assur. Corp., defendant.

FRANK A. KAUFMAN, District Judge.

Plaintiffs originally filed the within case on or about February 19, 1980 in the Superior Court of Baltimore City. On March 13, 1980, one of the two defendants, General Tire & Rubber Company (General Tire), removed the case to this Court. Subsequently, on March 17, 1980, the other defendant herein, General Accident Fire & Life Assurance Corporation (General Accident), joined with General Tire in filing an amended petition for removal.

■ Although plaintiffs have not filed a motion to remand this case to the state court and, in fact, have conceded through their counsel, in a letter to the Court dated April 15, 1980, that removal to this Court was proper, it is incumbent upon this Court to determine, *sua sponte*, whether it has subject matter jurisdiction in this case. *See, e. g.*, 14 Wright, Miller, & Cooper, Federal Practice and Procedure § 3739 at 756–57 (1976) and cases cited thereat. In this case removal is appropriate only if there is diversity of citizenship.

Plaintiffs are both residents of the state of Pennsylvania. Defendant General Tire is an Ohio Corporation with its principal place of business in Ohio. Defendant General Accident is a stock company of Great Britain. Although General Accident's principal place of business worldwide is in Perth, Scotland, its principal place of business in the United States is Philadelphia, Pennsylvania. The question presented herein is whether defendant General Accident is to be treated as a citizen of Great Britain, or of Pennsylvania, or of both, for purposes of diversity jurisdiction.

There is a considerable body of opinion to the effect that a foreign corporation is a citizen, for purposes of diversity jurisdiction, solely of the foreign state in which it was incorporated, regardless of its principal place of business. *See* 13 Wright, Miller, & Cooper, Federal Practice and Procedure § 3628, at 823–24 (1975) and cases cited thereat. In *Eisenberg v. Commercial Union Assurance Company*, 189 F.Supp. 500 (S.D. N.Y.1960), an action was instituted by a New York citizen against a British corporation. The defendant company's principal place of business in the world was London, England; its principal place of business within the United States was New York. The defendant corporation moved for dismissal for lack of diversity jurisdiction, con-

tending that since its principal place of business in the USA was New York, it, like plaintiff, was a citizen of New York. Judge Dimock rejected defendant's contention, stating, as a matter of statutory construction, that the principal place of business of a foreign corporation is irrelevant in determining whether diversity jurisdiction exists under 28 U.S.C. § 1332. In so doing, Judge Dimock wrote (at 502):

It is to be noted that the statute differentiates between States of the United States and foreign states by the use of a capital S for the word when applied to a State of the United States. Subdivision (c), therefore, in dealing with the *place of incorporation* refers only to a corporation incorporated in a State of the United States. When subdivision (c) goes on to deal with *principal place of business* it refers to the same corporation and thus only to a corporation incorporated in a State of the United States. The subdivision is not susceptible of the construction as if it read "all corporations shall be deemed citizens of the States by which they have been incorporated and of the States where they have their principal places of business." Unless a corporation is incorporated by a State of the United States it will not be deemed a citizen of the State where it has its principal place of business.[1] (emphasis in original)

After indicating that the principal place of business of a foreign corporation was irrelevant in determining whether diversity jurisdiction exists under 28 U.S.C. § 1332(c), Judge Dimock in *Eisenberg* (at 502) stated the alternative holding, that a foreign corporation might be treated as a citizen of the foreign state in which it is incorporated, and also of the state or foreign state where it has its principal place of business worldwide, but not additionally as a citizen of the state of the United States in which it has its principal place of business in the United States:

If I am wrong about this and a corporation incorporated by a foreign state can be deemed a citizen of the State where it has its principal place of business, defendant is in no better case on this motion. Defendant's principal place of business is not in New York; it is in London. Defendant would have me read subdivision (c) as if words were added to it so as to make it provide that a corporation shall be deemed a citizen "of the State where it has its principal place of business" *within the United States.*

I do not believe that the statute ought to be read otherwise than literally. It is true that the purpose of the amendment which made a corporation a citizen of the State where it had its principal place of business as well as of the State where it was incorporated was to reduce the number of cases which would come to the Federal courts under the diversity jurisdiction. *Hughes v. United Engineers & Constructors, Inc.,* D.C.S.D.N.Y., 178 F.Supp. 895. Even if, however, the amendment carried out this purpose by taking away from all foreign state corporations whose principal place of business was within the State, as well as all State corporations whose principal place of business was within the State, the right of removal of a case brought by a resident of that State, it was not the purpose of the amendment to abandon the protection from local prejudice against outsiders as the reason for diversity jurisdiction. It is a fair inference that a corporation which has located its principal place of business in a State has adopted that State as its actual residence and will not be subject to prejudice against outsiders. If a British corporation has located its principal place of business outside of the United States, however, and has set up two branches in the United States, one in Chicago and one in New York, and the one in New York is merely its principal place of business *in the United States,* no inference can be legitimately drawn from those facts that it has adopted New York

---

1. *See also, Clarkson Co., Ltd. v. Shaheen,* 544 F.2d 624, 628 n.5 (2d Cir. 1976); *Chemical Transportation Corp. v. Metropolitan Petrole-* *um Corp.,* 246 F.Supp. 563, 564–67 (S.D.N.Y. 1964); *Mazzella v. Pan Oceanica A/S Panama,* 232 F.Supp. 29, 31 n.1 (S.D.N.Y.1964).

as its actual residence. Its contact with New York may be so slight that it is still an outsider there. * * *. (emphasis in original.)

Several federal courts have adopted Judge Dimock's alternative view while not agreeing with his primary approach.[2] Thus, it has been suggested, that while "the primary holding in *Eisenberg* is reasonable as a matter of statutory interpretation," *see* 13 Wright, Miller, & Cooper, *supra* at 827, the alternative approach in *Eisenberg* is preferable. *See* 13 Wright, Miller, & Cooper, *supra* at 827–29; 1 Moore's Federal Practice ¶ 0.75[3] at 709.83–84 (1979).

■ If either of the alternative *Eisenberg* views is applied herein, diversity jurisdiction exists. Plaintiffs have not disputed General Accident's assertion that its principal place of business worldwide is Perth, Scotland. The fact that General Accident's principal place of business in the United States is Pennsylvania seemingly does not make it a citizen of that state for purposes of diversity jurisdiction. While the desirability of such a result has been suggested by the American Law Institute, *see* 1 Moore's Federal Practice, *supra* and in the Wright, Miller, & Cooper treatise, *supra* at 829, that result does not appear to comport with existing federal statutory provisions as construed and applied by the federal courts and the leading treatise writers to date.

It might be contended, nevertheless, that General Accident may be a citizen of Pennsylvania under the proviso clause of 28 U.S.C. § 1332(c). That subsection of § 1332 provides, in full, as follows:

(c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business: *Provided further*, That in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party–defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.

The record herein indicates that defendant General Accident is the insurer of plaintiffs and, thus, might be deemed to be a citizen of the same state as the plaintiffs who are its insureds. That state is Pennsylvania.

■ An examination, however, of the legislative history of 28 U.S.C. § 1332(c) reveals, that the proviso clause of the statute is inapplicable in the case at bar. The "provided further" clause in § 1332(c) was added to the statute by Congress in 1964 in response to a particular situation that had arisen in the federal courts in Louisiana. That latter state, along with Wisconsin, had enacted a "direct–action" statute which permitted an injured person to bring a tort action directly against the alleged tortfeasor's insurer, without joining the insured as a party defendant. Thus, a Louisiana litigant could bring a diversity action directly against an out–of–state insurance company in federal court, even though diversity jurisdiction would not have existed if the local insured had been the only defendant or joined as a party defendant. It was that result which the 1964 amendment to § 1332(c) was designed to correct. Thus, the Senate report accompanying the 1964 amendment stated:

The purpose of the proposed legislation is to amend section 1332(c) of title 28, United States Code, so as to eliminate under the diversity jurisdiction of the U.S. district courts, suits on certain tort claims in which both parties are local residents, but which, under a State "direct action" statute, may be brought directly against a foreign insurance carrier without joining the local tort–feasor as a defendant.

* * * * * *

**2.** *See, e. g., Arab International Bank & Trust Co., Ltd.,* 463 F.Supp. 1145 (S.D.N.Y.1979); *Bergen Shipping Co., Ltd. v. Japan Marine* *Servs., Ltd.,* 386 F.Supp. 430, 433 (S.D.N.Y. 1974); *Southeast Guar. Trust Co. v. Rodman & Renshaw, Inc.,* 358 F.Supp. 1001 (N.D.Ill.1973).

At the present time there are two States, namely, Louisiana and Wisconsin, which have "direct action" statutes. * *

*     *     *     *     *     *

As a result of these two statutes, [Wisconsin and Louisiana] tort cases involving only local residents, which in the other States would come within the exclusive jurisdiction of the State courts, would permit the filing of the law suits in the U.S. district courts in the respective States. The record indicates that in the State of Wisconsin the filing of suits under the direct action statute of that State has not imposed any undue burden upon the Federal district courts therein. However, in the case of Louisiana the testimony of the U.S. district judges and the statistics submitted by the Administrative Office of the U.S. Courts indicate a very different situation. It appears that in Louisiana a large number of cases are being filed in the Federal district courts because of the existence of the direct action statute of Louisiana. * * *

S.Rep.No.1308, 88th Cong., 2d Sess., *reprinted in* [1964] U.S.Code Cong. & Ad. News, pp. 2778, 2778–79.

■ The within case does not constitute the type of "direct action" referred to in the proviso clause of § 1332(c). In the case at bar, plaintiffs are suing their *own* insurance company, seeking to recover contract damages from General Accident under the terms of the uninsured motorist provision of their insurance policy. Numerous federal courts have expressly held that the proviso clause in § 1332(c) is inapplicable to such an action. " * * * [I]t has been held that the 1964 amendment [to 28 U.S.C. § 1332(c)] does not encompass actions by an insured against an insurer seeking to recover for his own injuries including those cases in which the insured is suing under the uninsured motorist coverage of a liability policy."

[footnotes omitted.] 13 Wright, Miller, & Cooper, Federal Practice and Procedure § 3629, at 832 (1975).[3]

In sum, complete diversity exists between plaintiffs and defendants herein. All of the other statutory prerequisites to removal are satisfied in this case. Neither of the defendants is a resident of Maryland or has its principal place of business in Maryland, *see* 28 U.S.C. § 1441(b), the amended petition for removal was timely filed, *see* 28 U.S.C. § 1446(b), both defendants joined therein, *see* 28 U.S.C. § 1446(a), and a bond was jointly filed by both defendants, *see* 28 U.S.C. § 1446(d). Accordingly, removal was proper.

On March 14, 1980, defendant General Tire filed a motion to transfer this case to the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). By letter to this Court dated April 18, 1980, defendant General Accident, through its counsel, indicated that it concurred in General Tire's motion to transfer and took the position that said motion should be granted. Plaintiffs have indicated that they oppose any transfer of this case to the Middle District of Pennsylvania.

On June 26, 1979, plaintiffs herein filed suit in this Court (*Roby, et al. v. General Tire & Rubber Company*, Civil No. K–79–1205). That case involved the same plaintiffs as those involved in the within case; the sole defendant in the earlier suit, namely, General Tire, is one of the two defendants herein. The accident which gave rise to the suit in Civil No. K–79–1205 is the same accident as that which gave rise to this action. On December 11, 1979, for the reasons set forth in an opinion filed on that date,[4] this Court granted the motion of defendant General Tire to transfer Civil No. K–79–1205 to the Middle District of Pennsylvania.

---

**3.** *Accord: Henderson v. Selective Insur. Co.,* 369 F.2d 143, 149 (6th Cir. 1966); *White v. United States Fidelity & Guaranty Co.,* 356 F.2d 746 (1st Cir. 1966); *Adams v. State Farm Mut. Auto Ins. Co.,* 313 F.Supp. 1349 (N.D.Miss. 1970); *Bishop v. Allstate Ins. Co.,* 313 F.Supp.

875 (W.D.Ark.1970); *Inman v. MFA Mutual Ins. Co.,* 264 F.Supp. 727 (E.D.Ark.1967).

**4.** A copy of that said opinion is attached hereto.

Seemingly, the only difference between this suit and Civil No. K–79–1205 is that an additional defendant has been joined herein. That additional defendant, General Accident, has stated that it desires the within case to be transferred to the Middle District of Pennsylvania. General Accident does business in Pennsylvania. Thus, the requirement of 28 U.S.C. § 1404(a), namely, that this suit could have been instituted in the Middle District of Pennsylvania, is satisfied in this case as it was in Civil No. K–79–1205.

Accordingly, for the reasons set forth in this Court's opinion in *Roby, et al. v. General Tire & Rubber Co.*, Civil No. K–79–1205, and for the further reasons set forth in this opinion, the motion of defendants to transfer the within case to the United States District Court for the Middle District of Pennsylvania will be granted. By letter to this Court dated May 15, 1980, defendant General Tire has agreed, without seeking contribution from defendant General Accident, to pay any additional expenses which plaintiffs may incur as a result of the transfer. The determination of the amount of those expenses, if the parties cannot agree as to the same, may be made by the transferee Court if that Court deems same to be appropriate.

### APPENDIX

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHARLES WILLIAM ROBY :
AND ELIZABETH ROBY

     V.     : CIVIL NO. K–79–1205

GENERAL TIRE & RUBBER :
COMPANY, ETC.

Filed: December 11, 1979

FRANK A. KAUFMAN, District Judge.

On June 30, 1978, plaintiff Charles Roby was involved in a motor vehicle accident on United States Route 30 in Chambersburg, Pennsylvania. That accident, according to plaintiff Charles Roby, involved a vehicle driven by him and a truck owned by defendant and driven by an agent of defendant, and was investigated, according to an uncontroverted affidavit of an investigator representing defendant's interest, by a Pennsylvania police officer. The alleged witnesses other than the parties live, according to defendant, in Chambersburg, Pennsylvania, in the Middle District of Pennsylvania. Charles Roby and his wife, Elizabeth, are citizens of Pennsylvania and live in Fairfield, Pennsylvania, which is located in the Middle District of Pennsylvania. Defendant is an Ohio corporation, with its principal place of business in that State. Defendant does business in Maryland and in Pennsylvania. Plaintiffs' claims are for sums in excess of $10,000 exclusive of interest and costs. In one cause of action, Charles Roby seeks recovery for personal injuries. In a second, Mr. and Mrs. Roby assert a consortium claim. Plaintiff Charles Roby alleges that he was treated by physicians some of whom practice in Maryland. Plaintiff Charles Roby contends that the testimony of those Maryland doctors will be most important on the issue of damages. Jurisdiction exists in this case pursuant to 28 U.S.C. § 1332(a)(1).

Defendant seeks dismissal of the within complaint for improper venue or, in the alternative, transfer of the case to the Middle District of Pennsylvania. Pursuant to 28 U.S.C. §§ 1391(a) and (c),[1] venue lies in this Court if the defendant does business in the State of Maryland. Defendant concedes, in a memorandum filed by it, that it does do business in Maryland. Accordingly, defendant's venue motion must and does fail. However, in the alternative, defendant seeks transfer of this case to the Middle

---

1. 28 U.S.C. §§ 1391(a) and (c) read as follows:
   (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

    \*    \*    \*    \*    \*    \*

  (c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

District of Pennsylvania, under 28 U.S.C. § 1404(a).[2] Since the defendant does business in Pennsylvania, venue lies in the Middle District of Pennsylvania, and plaintiffs could have originally instituted this suit in that district. Thus, one of the two prerequisites of 28 U.S.C. § 1404(a) is met.

The second prerequisite, the convenience of parties and witnesses, and the interest of justice, requires this Court to exercise the broad discretionary powers conferred upon it by 28 U.S.C. § 1404(a). *See Paesch v. Winter*, 366 F.2d 756, 757 (4th Cir. 1966) (per curiam), *affirming Paesch v. American Cyanamid Co.*, 257 F.Supp. 116 (D.Md.1966) (Winter, J.); Wright, Miller, Cooper, Federal Practice and Procedure § 3847. "Probably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer under 28 U.S.C.A. § 1404(a) is the convenience of witnesses." Wright, Miller, Cooper, *supra*, § 3851 at 264 (footnote omitted). Defendant asserts that all of the witnesses, including the State Police Officer involved in investigating the accident, are located in the Middle District of Pennsylvania. Plaintiffs counter by stating that their key medical testimony will be supplied by physicians residing in Maryland. In *Morganstern v. Marriott–Hot Shoppes*, 270 F.Supp. 75 (D.Md.1967), plaintiffs, residents of Virginia, brought suit in this District against a Delaware corporation with its principal place of business in Washington, D. C. The corporation was amenable to suit in both Virginia and Maryland. The claim arose out of injuries which occurred in Virginia. The witnesses were for the most part located in Virginia. However, plaintiff Mrs. Morganstern had received medical treatment in Maryland. Plaintiffs argued that if the suit were transferred to the Eastern District of Vir-

ginia, the key expert witnesses would be inconvenienced. That argument did not prevail; the motion to transfer to the Eastern District of Virginia was granted on condition that defendant pay the

> reasonable costs of travel between Baltimore and Alexandria of either or both of the [two Baltimore] physicians who testify, together with so much of the fees of such physician or physicians as is related to and based upon the additional time reasonably consumed by one or both of them in such travel in connection with the trial in this case.  * * *

*Id.* at 77. *See also Bacon v. John Hancock Mutual Life Insurance Co.*, 317 F.Supp. 302 (D.Md.1970), in which defendant's motion to transfer to the Eastern District of New York was granted on condition that defendant pay the costs of travel to New York of plaintiff's counsel and witnesses.

Following the reasoning of the *Morganstern* and *Bacon* cases and the guiding principles set forth in *Paesch v. American Cyanamid Co.*, 257 F.Supp. at 117, defendant's motion to transfer the within case to the Middle District of Pennsylvania will be granted, provided that defendant agrees to pay the additional expenses which plaintiffs may incur as a result of the transfer.[3] The determination of the amount of those expenses will be made, if the parties cannot agree as to the same, by the transferee Court.

**2.** 28 U.S.C. § 1404(a) reads as follows:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

According to Table C-10 at p. 8–40 of the Annual Report of the Director of the Administrative Office of the United States Courts (1979) (reporting with regard to the year July 1, 1978 June 30, 1979), the median disposition time of all cases tried in the Middle District of Pennsylvania is seven months; for non–jury trials, the median disposition time is three months; and for jury trials, nine months. The comparable figures for the District of Maryland are, respectively, twelve months, eleven months, and twelve months.

**3.** Defendant, on the record, during a hearing in open Court on November 26, 1979, so agreed.